Edward **CHRISTENSEN**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 01–04–00713–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 6, 2007.

Discretionary Review Refused
Dec. 5, 2007.

George McCall Secrest, Jr., Bennett & Secrest, L.L.P., Jani J. Maselli, Robin "Burt" Springer, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION ON REHEARING

ELSA ALCALA, Justice.

On November 16, 2006, a panel of this Court reversed on appeal the conviction of appellant, Edward Christensen, and remanded the cause to the trial court for further proceedings. The State filed motions for rehearing and en banc reconsideration. At the request of this Court, appellant timely filed a response to the State's motion. We grant the State's motion for rehearing, withdraw our previous opinion, and substitute this opinion in its stead.[1]

Appellant appeals from a conviction for state jail felony theft of property valued between $1,500 and $20,000. *See* Tex. Pen. Code Ann. § 31.03(e)(4) (Vernon Supp. 2006). Appellant pleaded not guilty.[2] The jury found appellant guilty of theft, and the trial court assessed punishment at confinement for two years in a state jail facility, suspended for four years of community

supervision, and a fine of $1,000. We sustain appellant's first issue that asserts that the evidence is legally insufficient to establish his guilt, and reverse and render judgment that he is not guilty of the offense.[3]

## Background

Appellant was a deputy with the Harris County Sheriff's Office. In March 1997, appellant became president of the Harris County Deputies' Organization (the Organization), a union that is a not-for-profit organization composed of approximately 3,000 deputies. The Organization was formed to provide services for the benefit of its members, such as the improvement of employment benefits, the improvement of working conditions, assistance to injured deputies, and assistance to the families of deputies injured or killed in the line of duty. The Organization maintained an office run by four officers—president, vice-president, secretary, and treasurer—and eight board members. The Organization raised funds for its expenses and activities from fees it received from its members through payroll deductions.

The Organization also raised funds through telemarketing. One of the telemarketers used by the Organization was Ron Kowalsky. Kowalsky began working for the Organization in January 1998 under a written agreement that was negotiated by William Tabor, then the Organiza-

---

1. Having granted rehearing, we overrule the State's motion for en banc reconsideration as moot. *See Giesberg v. State*, 945 S.W.2d 120, 131 n. 3 (Tex.App.-Houston [1st Dist.] 1996), *aff'd*, 984 S.W.2d 245 (Tex.Crim.App.1998).

2. Appellant pleaded not guilty to the indictment for the felony offense of engaging in organized criminal activity. *See* Tex. Pen.Code Ann. § 71.02 (Vernon Supp.2006). When the State rested its case-in-chief, appellant moved for and was granted a directed verdict on the

offense of engaging in organized criminal activity. The trial, however, proceeded on the lesser offense of state jail felony theft.

3. Because we conclude that the evidence is legally insufficient to sustain appellant's conviction, we need not address appellant's remaining issues that challenge the factual sufficiency of the evidence and the trial court's ruling that overruled his motion to quash the indictment.

tion's vice-president, and that was ratified by the Organization's board of directors. The agreement provided that Kowalsky would receive contingency fees that allowed him to keep 75% to 80% of the money raised from the "sale of advertising." Although appellant did not participate in the formation of the agreement, he was a primary contact for Kowalsky when Kowalsky began telemarketing for the Organization. Kowalsky's telemarketing that began as "the sale of advertising" later included the solicitation of funds for the Organization over the telephone by mentioning the Organization's support for different programs, such as drug awareness and Toys for Tots. The Organization never had official permission, authorization, or recognition to solicit donations for Toys for Tots, which is a program trademarked by the United States Marine Corps. It did, however, donate toys to the program.

Consistent with his general practice for obtaining approval of a telemarketing campaign for the Organization, Kowalsky "briefly" discussed Toys for Tots with appellant, although Kowalsky could not recall the specifics of the conversation. Kowalsky then drafted the correspondence that mentioned Toys for Tots. Kowalsky sent the draft to appellant for approval. Appellant signed the draft letter, which, according to Kowalsky, permitted the telemarketing for Toys for Tots. Appellant later signed another letter mentioning Toys for Tots. The two letters signed by appellant regarding Toys for Tots were virtually identical, except that the names of the officers and board members shown on the stationery were different, which Kowalsky explained was consistent with his general practice to obtain new letters when the members of the board changed.

The Toys for Tots letter stated as follows:

Dear Friend,

On behalf of the *Harris County Deputies' Organization,* please let me Personally thank you for your generous support.

Every year at this time the *Harris County Deputies' Organization* lends A helping hand of support to the **"TOYS FOR TOTS"** program. This Program provides toys for children of families who cannot afford to do So, and to those children who have no family. Just knowing that there Is a light at the end of the tunnel gives hope to these children year after Year. Let us all as a community give what we can in order to bring Some Joy and Laughter into the lives of those who are less fortunate Than others.

Once Again I would like to thank you for your generous support and Cooperation. It is only through such assistance that we can carry on.

Sincerely,

[Signature]

Ed Christensen, President

*Harris County Deputies' Organization*

(Emphasis, punctuation, and capitalization in original).

Although Kowalsky initially conducted the telemarketing through his own business, he soon hired subcontractors. One of the subcontractors was John Merritt, who had a telemarketing business consisting of approximately 15 employees seated at rows of tables with telephones. Merritt solicited funds for Toys for Tots on behalf of the Organization in 1999 and 2000. Merritt worked independently, deciding on his own the programs for which he would solicit. Kowalsky's sole involvement with Merritt's telemarketing consisted of tendering, in September 1999, the Toys for Tots letter that was signed by appellant, in addition to letters for other programs that were approved by appellant. Merritt used

the correspondence that he received from Kowalsky to prepare a script for his employees to read during their telephone solicitations. Merritt also gave copies of that correspondence to approximately 10% of prospective contributors who requested written verification before making a contribution. Merritt did not contact appellant or anyone at the Organization regarding the Toys for Tots solicitation.

Merritt tendered the funds received from contributors to Kowalsky about once a week, but no attempt was made to segregate the funds to determine which programs the contributors intended to support. Kowalsky took the commingled funds that he received from Merritt to the clerical staff at the Organization, who would deposit all the funds into a bank account that belonged to the Organization. About two days later, Kowalsky would receive a check from the Organization for 75% to 80% of the funds that he had delivered to the Organization. Appellant and another officer usually signed the check for Kowalsky's payment. Kowalsky kept 10% of the payment, but tendered the rest to Merritt.

The clerks at the Organization who accepted the funds from Kowalsky reported to the treasurer. The treasurer then reported the information to the board at regularly scheduled meetings. Kowalsky went to a couple of board meetings to discuss fundraising, but he did not recall discussing the Toys for Tots program with the board.

In mid-November 2000, after Terry Padilla had taken over as treasurer for the Organization, she noticed that some of the checks received from Kowalsky had Toys for Tots written on the memo line of the checks. Padilla was unaware of the telemarketing for Toys for Tots and asked Kowalsky about the checks. After speaking with Kowalsky, Padilla reported Kow-

alsky's activities to appellant, who, according to Padilla, was surprised to learn about the Toys for Tots solicitations. In Padilla's presence, appellant made a telephone call to Kowalsky, instructing him to stop soliciting funds for Toys for Tots. Padilla and appellant also discussed their desire to donate toys for Toys for Tots at that year's annual Christmas party hosted by the Mexican American Sheriff's Organization (MASO), another union composed of deputies employed by the sheriff's office.

Also in mid-November, a search warrant was executed at Merritt's business after an investigator at the Harris County Attorney's Office learned that Merritt's employees were falsely identifying themselves as peace officers when they made telephone calls requesting donations for the Organization. During the execution of the search warrant at Merritt's business, officers recovered the original correspondence signed by appellant that mentioned the Toys for Tots program.

After the search warrant was executed at Merritt's business, the Organization's board discussed the Toys for Tots telemarketing campaign at its next regularly scheduled meeting. Louis Guthrie, the vice-president, asked appellant whether funds were being raised for Toys for Tots. Appellant responded that he "was going to look into it." At the next meeting of the Organization, appellant said that he had "investigated Toys for Tots and anybody could raise money for Toys for Tots." Appellant, a former Marine, explained that he had "contacted a Hispanic sergeant at the Marine Corps base who stated it was okay."

In December 2000, MASO held its annual Christmas party, where appellant arranged the donation of $1,700 worth of bicycles to Toys for Tots. The bicycles were accepted by uniformed Marines representing Toys for Tots at the party.

Kowalsky also donated approximately $500 worth of toys. Several members of the Organization recounted that the Organization also made at least one other contribution to Toys for Tots before 2000.

Although the Organization made donations to Toys for Tots, the amount of funds expended for Toys for Tots was substantially less than the amount of funds received from the telemarketing solicitations. David Pilant, a fraud examiner employed by the Harris County District Attorney's office, explained that bank records for the Organization show that between September and December 2000, the Organization received $20,515 for the Toys for Tots program through 222 checks that had a notation that the donation was for "Toys for Tots."[4] After paying Kowalsky 75% to 80% of these funds, the Organization kept approximately $4,000 from these checks written in late 2000. After the search warrant was executed and after appellant instructed Kowalsky to stop the telemarketing for Toys for Tots, the Organization accepted at least four checks from people who made donations intended for Toys for Tots.

At trial, appellant denied any intent to commit theft. Appellant said that Kowalsky was supposed to be raising funds for the Organization generally and the correspondence was "simply to explain to people what we do." Appellant acknowledged that, as a former Marine, he was very familiar with Toys for Tots. Appellant, the Organization, and Merritt were sued by the Harris County Attorney's Office, resulting in a $125,000 settlement, part of which was forwarded to the Toys for Tots program.

### Legal Sufficiency of the Evidence

Appellant contends that the evidence is legally insufficient to establish his criminal intent to commit theft because he did not approve or write any of the scripts used by the solicitors during the telemarketing; he did not have any contact with Merritt; he did not have control over funds for the Organization or over the amount of donations made to Toys for Tots; he never personally received any funds from the Toys for Tots program; donations were made to Toys for Tots from the funds received by the telemarketing; his signature was on a thank-you letter, not a so-

---

4. At trial, 18 people testified that they would not have sent checks to the telemarketer if they had known that Toys for Tots would not receive the majority of the funds. The record shows, as follows:
- On August 1, 2000, Timothy Stovall wrote a check for $100;
- On October 2, 2000, Michael Likos wrote a check for $200;
- On October 2, 2000, Paul Fisher wrote a check for $150;
- On October 4, 2000, Albert Coveney wrote a check for $100;
- On October 4, 2000, Sandra Wilson wrote a check for $150;
- On October 10, 2000, Malcolm Phillips wrote a check for $500;
- On October 10, 2000, Dr. Gary Flores wrote a check for $250;
- On October 17, 2000, Jimmy Nichols wrote a check for $125;
- On October 18, 2000, Karen Perez wrote a check for $400;
- On October 19, 2000, Norma Young wrote a check for $100;
- On October 25, 2000, Sam Johnson wrote a check for $150;
- On November 8, 2000, Bryant Dussetschleger wrote a check for $250;
- On November 22, 2000, Annika Tycer wrote a check for $100;
- On November 28, 2000, Marienne Beeckman wrote a check for $100;
- On November 29, 2000, John Cartwright wrote a check for $50;
- On December 17, 2000, Richard Stamper wrote a check for $75;
- On November 29, 2000, Santos Guajardo wrote a check for $100; and
- On December 4, 2000, Thomas Clark wrote a check for $100.

licitation letter; and his directions to Kowalsky were to collect donations for the Organization generally and not for any specific program. The State responds that appellant's criminal intent is established by evidence that shows that the correspondence mentioning Toys for Tots was signed by appellant; donations made by the Organization to Toys for Tots were inadequate in relation to donations made to the Organization that were intended for Toys for Tots; appellant was deceptive; and appellant personally benefited from the funds received from contributions to Toys for Tots.

## A. Applicable Law for Determination of Legal Sufficiency of the Evidence

In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to give their testimony. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim.App.2000). A jury is entitled to accept one version of the facts and reject another, or reject any part of a witness's testimony. *Id.*

■■■ In determining whether circumstantial evidence is legally sufficient to establish guilt, we must consider the "logical force of the combined pieces of circumstantial evidence in the case, coupled with reasonable inferences from them." *Evans v. State*, 202 S.W.3d 158, 166 (Tex.Crim.App. 2006) (holding that evidence was legally sufficient to show that appellant exercised actual care, custody, control, or management of cocaine on coffee table by examining combined pieces of circumstantial evidence). A court must not conclude that the evidence is legally insufficient by merely analyzing each fact in isolation, and must not rely on alternative inferences from or explanations for the isolated pieces of evidence. *Id.* at 164. Instead, appellate courts are to view the evidence "in combination and in sum total." *Id.* at 166.

## B. Applicable Law Concerning Theft Under Law of Parties

The Texas Penal Code states that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PEN.CODE ANN. § 7.01(a) (Vernon 2003). Criminal responsibility is defined in several ways, one of which is that the defendant, "acting with intent to promote or assist the commission of the offense ... solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (Vernon 2003).

■■■ When a party is not the "primary actor," the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex.Crim.App.1985); *Miller v. State*, 83 S.W.3d 308, 313 (Tex.App.-Austin 2002, pet. ref'd). "Circumstantial evidence alone may be used to prove that a person is a party to an offense." *Powell v. State*, 194 S.W.3d 503, 506 (Tex.Crim.App.2006). The evidence must show that the parties were acting together to accomplish their common purpose. *See Wygal v. State*, 555 S.W.2d 465, 469 (Tex.Crim.App.1977); *Miller*, 83 S.W.3d at 314. The agreement to accomplish a common purpose, if any, must be made before or contemporaneous with the criminal event, but in determining whether one has participated in an offense, the court may examine the events occurring before, during, and after the commis-

sion of the offense. *Wygal,* 555 S.W.2d at 469; *Miller,* 83 S.W.3d at 314; *see also Powell,* 194 S.W.3d at 507.

It is undisputed that appellant never had any contact with any complainant. His guilt, if any, is only as a party to theft. For the State to establish appellant's guilt as party to theft, the jury charge instructed the jury, in accordance with the Texas Penal Code, that (1) Padilla, Kowalsky, or Merritt, between August to December 2000, acting with the intent to deprive the complainants of their money, appropriated complainants' money valued between $1500 and less than $20,000, by deception by (a) giving them a false impression of law or fact that affected their judgment and that appellant, Padilla, Kowalsky, or Merritt did not believe to be true, or (b) promising performance that affected the judgment of complainants in the transaction, which appellant, Padilla, Kowalsky, or Merritt did not intend to perform or knew would not be performed, *see* TEX. PEN.CODE ANN. §§ 31.03(a), (e)(4) (Vernon Supp.2006), 31.09 (Vernon 2003); and (2) appellant acted with intent to promote or assist the commission of theft by soliciting, encouraging, directing, aiding or attempting to aid them to commit the offense. *See id.* §§ 7.01(a), 7.02(a)(2).

### C. Applicable Law and Analysis Concerning Criminal Intent to Commit Theft

█ Because no direct evidence establishes appellant's guilt, we must determine whether the circumstantial evidence shows that he had criminal intent to commit theft. A person acts with intent when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003). Intent is most often proven through the circumstantial evidence surrounding the crime, rather than through direct evidence. *Hernandez*

*v. State,* 819 S.W.2d 806, 810 (Tex.Crim. App.1991). A jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant. *Id.* Criminal intent is necessary to establish theft. *See Ellis v. State,* 877 S.W.2d 380, 383 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd).

█ In determining whether the evidence is legally sufficient to establish whether appellant had criminal intent to commit theft, we examine the evidence in the record in a light most favorable to the jury's verdict, which includes evidence pertaining to whether he personally gained from what was allegedly taken, whether he partially performed on any of the representations that were made to the complainants, whether he used deception to obtain property, and whether any inferences can properly be drawn from the combined force of the circumstantial evidence.

#### 1. Personal Gain

█ In determining whether the defendant had criminal intent to commit theft, we may consider whether the defendant experienced personal gain from the property obtained from the complainants. *See King v. State,* 17 S.W.3d 7, 17 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (noting that evidence that King had criminal intent is shown in part by his use of complainant's money for sole purpose of paying personal expenses and purchasing items for personal benefit). Viewed in a light most favorable to the jury's verdict, the evidence shows that appellant used a credit card that belonged to the Organization to cover his expenses while performing work for the Organization and received a stipend of $1,500 for his services as president of the Organization. The evidence also shows that funds solicited under the telemarketing campaign were used to finance a party for the Organization, a benefit for appellant as well as the other

members of the Organization. The evidence is undisputed, however, that the board controlled the finances of the Organization. Appellant attended the party, but the decision to host the party was made by the Organization's board, not appellant. The board paid appellant the stipend for his work as president of the Organization and allowed him to use the credit card to cover expenses for that work. But it is undisputed that appellant never received any funds that were not authorized by the board.

The State also points out that the evidence, viewed in the light most favorable to the jury's verdict, shows that the solicitations for Toys for Tots by the telemarketers occurred during the period of time when appellant was the president of the Organization, appellant "called the shots" for the Organization, and appellant controlled some of the finances for the Organization by writing checks for the Organization. This evidence is no evidence of criminal intent to commit theft by deception, however, because no evidence shows that appellant received any funds that had not been authorized by the board. In one of its appellate briefs, the State concedes that it "has not claimed ... that the appellant became rich or gained anything extra as a result of the solicited donations to the [Organization] on behalf of the Toys for Tots program." We conclude no evidence shows that appellant personally benefited from the telemarketing that mentioned the Organization's support for Toys for Tots.

### 2. Partial Performance

█ The evidence may be legally insufficient to show criminal intent when the evidence shows partial performance of the matter for which funds were tendered. *See Peterson v. State*, 645 S.W.2d 807, 811–12 (Tex.Crim.App.1983) (holding evidence legally insufficient to show criminal intent to commit theft when evidence showed that Peterson failed to complete construction of project that was 95% complete); *Martinez v. State*, 754 S.W.2d 799, 800 (Tex.App.-San Antonio 1988, pet. ref'd) (holding evidence legally insufficient to show theft when evidence showed payment of almost half of amount owed before dispute arose as to amount still unpaid); *Cox v. State*, 658 S.W.2d 668, 670 (Tex.App.-Dallas 1983, pet. ref'd) (holding evidence legally insufficient because evidence showed Cox performed "a great deal of the services" that he promised to perform and thus no evidence showed any representation or promise that was false "at the time complainant surrendered any of the money to him"). It is undisputed that the Organization gave $1,700 in toys to Toys for Tots in December 2000, and thus it financially gave "support" to Toys for Tots, consistent with the representation in the letter that was signed by appellant. The Organization thus undisputedly performed, at least partially, what was represented in the letter signed by appellant, by giving "support" to Toys for Tots. *See Peterson*, 645 S.W.2d at 811–12; *Martinez*, 754 S.W.2d at 800; *Cox*, 658 S.W.2d at 670.

The dissenting opinion suggests that the jury could have determined that the December 2000 donation was part of appellant's plan to try to cover up the crime because the donation was made only after the search warrant was run at Merritt's business. Although the dissenting opinion questions appellant's motives, the evidence undisputedly shows that the Organization donated toys to Toys for Tots, supported Toys for Tots, and thus partially performed what the telemarketers represented would be performed. *See Peterson*, 645 S.W.2d at 811–12; *Martinez*, 754 S.W.2d at 800; *Cox*, 658 S.W.2d at 670.

Even if appellant did not partially perform on the representation that the Organ-

ization would support Toys for Tots, that lack of performance alone would be insufficient to establish a criminal offense. *See Phillips v. State,* 640 S.W.2d 293, 294 (Tex. Crim.App.1982) (holding evidence legally insufficient to show criminal intent to commit theft when contractor received down payment and failed to perform anything under agreement because no evidence showed deception by contractor). Thus, the mere fact that the Organization did not perform what it represented to the complainants would alone be legally insufficient to establish criminal intent to commit theft. *See id.*

### 3. Deception by Appellant

### a. No Evidence of Deception at Time of Solicitation

▉ The critical distinction between conduct that is criminal versus civil in nature is whether the record shows deception and not merely a failure to perform. *Webb v. State,* 752 S.W.2d 208, 210 (Tex. App.-Houston [1st Dist.] 1988, pet. ref'd) (stating, "Here, unlike in *Phillips* ... the critical distinction is that the record shows deception, and not a mere failure to perform"); *see Phillips,* 640 S.W.2d at 294. Proof of intent to commit theft is determined at the time the alleged criminal act is committed. *See Wilson v. State,* 663 S.W.2d 834, 836–37 (Tex.Crim.App.1984) ("Relevant intent to deprive the owner of the property is the accused's intent at the time of the taking"); *Kinder v. State,* 477 S.W.2d 584, 586 (Tex.Crim.App.1971) (holding evidence legally insufficient to prove theft because no proof showed promises were false *ab initio,* when evidence showed some money was paid as partial performance of agreement); *Reed v. State,* 717 S.W.2d 643, 645 (Tex.App.-Amarillo 1986, no pet.) ("To prove its allegation of appellant's intent to deprive

[complainant] of the money, the State was obligated to establish that intent at the time appellant exchanged the check into cash.").

▉ Under the Penal Code, "deception" is defined as "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." *See* TEX. PEN.CODE ANN. § 31.01(1)(A) (Vernon Supp.2006). As a party to the offense, the evidence must show that appellant intended for the telemarketers to use deception to obtain the contributions. However, here, no evidence shows that appellant intended for telemarketers to use deception to obtain funds from contributors. Viewing the evidence in a light most favorable to the jury's verdict, the evidence shows that appellant testified that he was a former Marine and was familiar with Toys for Tots, appellant signed the letter that began the Toys for Tots telemarketing, and appellant knew that the telemarketers would be telling contributors that the organization supports Toys for Tots. However, no implied or express promises were made to the complainants concerning the amount of support the Organization would give to Toys for Tots. Rather, the representations in the letter and the type of telemarketing that appellant authorized were simply that the Organization would support Toys for Tots, which it did.

The dissenting opinion strongly relies on evidence that, as a former Marine, appellant knew he could not solicit funds in this manner for Toys for Tots. The use of the trademark owned by the Marine Corps was not authorized, and appellant and the Organization have a civil judgment against them for that conduct.[5] The issue here,

---

5. Using a trademark improperly is a decep-

tive trade practice for which a person may be

however, is whether appellant intended to deceive complainants into making a donation. No evidence shows an intent by appellant to deceive the complainants. The letter signed by appellant informed contributors that the checks they were writing were for the Organization. The letter then told contributors that the Organization supports Toys for Tots, which it undisputedly did. No evidence shows any intent by appellant to commit theft by deception of the contributors. *See Wilson,* 663 S.W.2d at 836; *Kinder,* 477 S.W.2d at 586; *Reed,* 717 S.W.2d at 645.[6]

### b. Deception After Event is Alone Not Enough to Show Intent

 The State points to appellant's "deception" after the search warrant was run on Merritt's business to show deception by appellant. Deception after an alleged crime is a circumstance that may permit an inference of guilt. *See Valdez v. State,* 623 S.W.2d 317, 321 (Tex.Crim.App. 1979) (noting that event after alleged crime, such as flight from scene, is circumstance from which guilt may be inferred); *Sosa v. State,* 177 S.W.3d 227, 230 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (following *Valdez* ). However, evidence that only shows deception after the fact is legally insufficient to establish criminal intent at the time of the telemarketing. *See Scott v. State,* 946 S.W.2d 166, 168 (Tex. App.-Austin 1997, pet. ref'd) (holding that, standing alone, proof that defendant as-

sisted primary actor in making getaway after crime committed is insufficient to support defendant's conviction as party to crime); *Guillory v. State,* 877 S.W.2d 71, 74 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (holding that if evidence shows mere presence of defendant at scene of crime, or even his flight from scene, without more, then it is insufficient to sustain conviction as party to offense).

Viewed in a light most favorable to the jury's verdict, the evidence shows that after the criminal investigation began with the execution of the search warrant on Merritt's business, appellant was not forthcoming with the Organization about his knowledge of the Toys for Tots telemarketing. Appellant told the board, at first, only that he would look into the matter. Later, appellant said that he had "investigated Toys for Tots and anybody could raise money for Toys for Tots" and that he had "contacted a Hispanic sergeant at the Marine Corps base who stated it was okay." The State suggests that appellant had to know these statements were untrue due to appellant's familiarity with Toys for Tots. Even if these statements were deceptive, the statements occurred after the commencement of the criminal investigation, and, alone, are insufficient to show criminal intent to commit theft *at the time* the contributions were made. *See Scott,* 946 S.W.2d at 168; *Guillory,* 877 S.W.2d at 74.

### 4. The Combined Evidence

civilly sued. Under Section 17.46(b)(5) of the DTPA, a deceptive trade practice is,

> representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not.

TEX. BUS. & COM.CODE ANN. § 17.46(b)(5) (Vernon Supp.2006).

**6.** The telemarketers developed a script that went much further than what was mentioned

in the letter signed by appellant. No evidence shows that appellant had any knowledge of or role in the development or use of the scripts. Similarly, Merritt had telemarketers falsely represent themselves as peace officers, and other improper activity occurred at Merritt's office. The evidence undisputedly shows that appellant had no contact with Merritt and no evidence connects appellant with any of Merritt's activities.

The State contends that the logical force of the combined pieces of circumstantial evidence in the case, coupled with reasonable inferences from them, provides legally sufficient evidence to support appellant's conviction. See Evans, 202 S.W.3d at 166. Viewed in a light most favorable to the jury's verdict, the combined evidence shows that appellant knew that he had signed correspondence that expressly tells contributors that the Organization lends a "helping hand of support" to Toys for Tots and requesting that people "give what we can"; that he discussed the Toys for Tots telemarketing with Kowalsky; that by signing the letter that mentioned the program, he approved of the Toys for Tots telemarketing just as he approved other telemarketing campaigns; that he failed to arrange for or tender funds received by the telemarketers to Toys for Tots in amounts commensurate with what was contributed; and that he did not disclose his knowledge of the telemarketing for Toys for Tots when directly asked about it after the telemarketing had ceased.

Appellant was charged with his role in the telemarketing that asked the complainants to contribute to the Organization under the representation that the Organization supports Toys for Tots. Appellant did not have permission to use the Toys for Tots name, and was sued civilly for that conduct, which resulted in a large civil judgment against him and the Organization. But improper use of the Toys for Tots name does not make what is improper conduct subject to liability in civil court into a criminal offense of theft. The complainants were plainly told in the letter signed by appellant that money was for the Organization and that their contribution was for the Organization to "carry on." The letter told contributors only that the Organization gave "support" to Toys for Tots, which is shown by the evidence to have undisputedly occurred. No evidence shows deception of these complainants who wrote checks to the Organization, which supports Toys for Tots.

The dissenting opinion suggests that the jury could simply have convicted if it believed Kowalsky's testimony. However, reliance on Kowalsky's testimony would result in the acquittal of appellant, because Kowalsky plainly testified that appellant had no criminal intent to commit theft or any criminal act. The dissenting opinion also finds distasteful the arrangement that allowed the telemarketers to keep over 75% of the total funds collected in checks that included a notation stating "Toys for Tots" and the Organization. That financial division, however, was undisputedly arranged by others in the Organization, not appellant. Additionally, the division of assets here is consistent with the customary division of assets between telemarketers and their clients.

The only evidence in the record that suggest deception by appellant is the deception that occurred after the criminal investigation began when appellant related that anyone could raise money for Toys for Tots and that a sergeant said it was okay, but that later deception to the board for the Organization is no evidence that at the time the contributions were made, appellant intended to have anyone deceive the complainants. The bottom line is that there is no evidence in the record that appellant either used or encouraged Kowalsky or anyone else to make misrepresentations to the complainants to obtain their money. We conclude that, viewing the evidence in a light most favorable to the jury's verdict and considering the combined evidence and the reasonable inferences from that evidence, a rational trier of fact could not have found that appellant acted with intent to promote or assist the commission of theft by soliciting, encouraging, directing, aiding or attempting to

aid others to commit the offense. *See* TEX. PEN.CODE ANN. §§ 7.01(a), 7.02(a)(2); *King*, 29 S.W.3d at 562. We hold that the evidence is legally insufficient to establish appellant's guilt as a party to theft because no evidence shows that he had the criminal intent to commit theft.

### Conclusion

We reverse the judgment of the trial court and render judgment that appellant is not guilty of the offense.

Justice JENNINGS, concurring.

Justice TAFT, dissenting.

TERRY JENNINGS, Justice, concurring on rehearing.

I join Justice Alcala's excellent opinion. I write separately to emphasize that there is simply no evidence in the record that appellant, Edward Christensen, under the law of parties, either used or encouraged anyone to make misrepresentations to the complainants to obtain their money.

There is no evidence that appellant, acting with the intent to promote or assist the commission of the offense of theft by deception, did in fact solicit, encourage, direct, aid, or attempt to aid another person to commit the offense. *See* TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 2003). Nor is there any evidence that appellant, acting with the kind of culpability required for the offense of theft by deception, did in fact cause or aid an innocent or non-responsible person to engage in conduct prohibited by the definition of the offense. *See id.* § 7.02(a)(1).

The Texas Penal Code provides that a person commits the offense of theft if he "unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a) (Vernon Supp.2006). Appropriation of property is unlawful if "it is without the owner's effective consent." *Id.*

§ 31.03(b)(1). Consent is not effective if "induced by deception." *Id.* § 31.01(3) (Vernon Supp.2006). "Deception" means,

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true; ... or

. . . .

(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform of knew the promise would not be performed.

*Id.* § 31.01(1)(A),(E). Moreover, a person acts intentionally, or with intent, "with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a) (Vernon 2003). In theft cases, the "[r]elevant intent to deprive the owner of property is the accused's intent at the time of the taking." *Wilson v. State*, 663 S.W.2d 834, 836–37 (Tex.Crim.App.1984). In its charge to the jury, the trial court appropriately tracked the language of the above statutory provisions, and the State had the burden to show that appellant actually intended that the consent of the complainants in this case be induced by deception as defined above.

The State argues that the evidence is legally and factually sufficient to support appellant's conviction for the offense of theft by deception because "appellant induced others to gain money for [the Harris County Deputies' Organization ('HCDO') ]

by soliciting donations on behalf of the Toys for Tots program (1) when those donations were not intended to be provided to—and were not provided to—the Toys for Tots program, (2) when those donations would not have been provided had it not been represented that the donations were being made on behalf of the Toys for Tots program, and (3) when those donations were in fact not provided to the Toys for Tots program, but were instead used to pay stipends to the appellant and other members of the Board of the HCDO."

In support of this argument, the State relies exclusively on the following letter signed by appellant:

Dear Friend,

On behalf of the *Harris County Deputies' Organization,* please let me Personally thank you for your generous support.

Every year at this time the *Harris County Deputies' Organization* lends A helping hand of support to the **"TOYS FOR TOTS"** program. This Program provides toys for children of families who cannot afford to do So, and to those children who have no family. Just knowing that there Is a light at the end of the tunnel gives hope to these children year after Year. Let us all as a community give what we can in order to bring Some Joy and Laughter into the lives of those who are less fortunate Than others.

Once Again I would like to thank you for your generous support and Cooperation. It is only through such assistance that we can carry on.

Sincerely,

[Signature]

Ed Christensen, President

*Harris County Deputies' Organization*

The State asserts that by signing the letter, "appellant approved the telephone solicitation or marketing of individuals to donate money to the HCDO on behalf of the Toys for Tots program."

The State contends that "the letter authorized and signed by appellant was to induce donations to the HCDO on behalf of the Toys for Tots program when in fact it was clear that those donations would not be provided to the Toys for Tots program." However, the very first sentence of the letter expressly indicates that it is in fact a thank you letter for donations already received by the HCDO. After thanking the addressee for their support, the letter goes on to note that the HCDO "lends A helping hand of support" to the program.

The distinction here is critical. The State had the burden to prove, at the time of the taking of the complainants' money, either that appellant, acting with intent to promote or assist the commission of the offense of theft by deception, did in fact solicit, encourage, direct, aid, or attempt to aid another person to commit the offense, or, acting with the kind of culpability required for the offense, did in fact cause or aid an innocent or non-responsible person to engage in conduct prohibited by the definition of the offense.

In fact, Ron Kowalsky, the telemarketer hired to solicit funds for the HCDO, "could not recall the specifics" of his conversation with appellant about Toys for Tots. The record reveals the following exchange:

[State]: . . . Okay. Did you discuss the Toys for Tots Program and solicitation with Mr. Christ[e]nsen before you began soliciting for that?

[Kowalsky]: I remember drafting a letter, putting a letter in his mailbox to have it approved or disapproved.

After appellant signed the letter, Kowalsky began telemarketing for the HCDO.

Subsequently, he subcontracted with John Merritt to solicit funds on behalf of the HCDO, and he gave the letter to Merritt.

However, there is no evidence at all that appellant had any role in the preparation or use of the scripts that were used by the telemarketers. There is no evidence that he knew what the telemarketers were representing to the complainants to obtain their money. For example, there is no evidence that appellant knew that the telemarketers were misrepresenting themselves as Harris County Sheriff's Deputies and specifically asking for donations for Toys for Tots and not the HCDO. Also, Merritt had no contact with appellant or anyone else at the HCDO, and he worked independently.

It cannot be inferred that, by signing the letter, appellant actually intended for Kowalsky or anyone else to make misrepresentations to the complainants to obtain their money. The presence of his signature on the letter does not support the inference that appellant, acting with the intent to promote or assist the commission of the offense of theft by deception, did in fact solicit, encourage, direct, aid, or attempt to aid another person to commit the offense. Nor can it be inferred from his signature on the letter that appellant, acting with the kind of culpability required for the offense of theft by deception, did in fact cause or aid an innocent or non-responsible person to engage in conduct prohibited by the definition of the offense.

Also, Kowalsky's very limited testimony about his dealings with appellant does not support any such inferences, and, again, Merritt had no contact with appellant or anyone else at the HCDO. Appellant testified that Kowalsky was to raise funds for HCDO, and Kowalsky himself did not testify that he ever informed appellant that

he would use the letter to raise money for Toys for Tots and not the HCDO.

In sum, the State presented no evidence to the jury to prove that appellant actually intended that the consent of the complainants in this case be induced by deception. There is no evidence in the record that appellant, under the law of parties, either used or encouraged Kowalsky, Merritt, or anyone else to deceive the complainants to deprive them of their money.

TIM TAFT, Justice, dissenting on rehearing.

I respectfully dissent from the holding that the evidence is legally insufficient. I write to present the facts viewed in the light most favorable to the jury's verdict, considering the combined evidence and the reasonable inferences therefrom, as called for by the majority opinion. *See Evans v. State*, 202 S.W.3d 158, 166 (Tex.Crim.App. 2006) (we must consider logical force of combined pieces of circumstantial evidence, coupled with reasonable inferences therefrom); *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000) (we view all evidence in light most favorable to verdict).

The evidence showed an ongoing course of action whereby the Harris County Deputies' Organization ("HCDO") raised money by employing telephone solicitors who received 75% to 80% of the money raised. The telephone solicitations mentioned various charities HCDO was ostensibly supporting, causing the persons solicited to believe that the donations, or at least a substantial portion thereof, were going to these charities. The course of action was set in motion by a letter signed by appellant, the President of HCDO, whenever a new solicitation campaign or program was to begin. Ron Kowalsky[1] was the pri-

---

1. When HCDO originally contracted with

Kowalsky, prior to appellant having become

mary telemarketer with whom appellant acting as HCDO President had interaction, but Kowalsky also employed John Merritt and others as subcontractors.[2] As HCDO President, appellant signed two separate letters authorizing the solicitation of funds in this manner mentioning Toys for Tots as the featured charity. As a Marine whose father, brothers, uncles, and cousins were Marines, appellant testified that he was very familiar with Toys for Tots. However, the Marine Corps does not allow telephone solicitations, and does not allow hiring telemarketers to dilute the money that would go toward buying gifts for the recipients of Toys for Tots. As HCDO President, appellant also was one of two signers on each of the checks Kowalsky received for 75% to 80% of the funds received through the telemarketing program.[3]

After the police executed a warrant to seize evidence at John Merritt's telemarketing location, appellant was asked to explain to the HCDO Board about Toys for Tots, and he said he would look into it. Jurors reasonably could have viewed appellant's lack of candor as inculpatory, when, even according to his own witnesses, appellant had already been shown checks with notations for Toys for Tots and copies of the letter he signed concerning Toys for

Tots, and appellant had called off the fundraising for Toys for Tots. At the next Board meeting, appellant claimed to have checked with an unnamed sergeant at the Marine Corps base who stated what they were doing was okay. However, HCDO never had official permission or authorization to be involved with Toys For Tots in any capacity, much less to solicit donations for Toys for Tots. Jurors reasonably could have viewed appellant's attempt to get permission from some unnamed sergeant, as opposed to getting official approval, as part of a cover-up.

Between September and December 2000, HCDO received $20,515 via 222 checks with notations "Toys for Tots." A donation of $500 may have been made by HCDO to Toys for Tots in 1998, 1999, or 2000,[4] and $1700 worth of bicycles was given, at appellant's direction, by HCDO to Toys for Tots at another deputies' union's Christmas party in 2000. The bicycles were donated only after a police raid on Merritt's telemarketing operation where an original of appellant's letter, authorizing the Toys for Tots solicitation program, and scripts embellishing on the letter, were recovered. Indeed, the Marines in uniform at the other deputies' union Christmas event had been instructed by their

---

President of HCDO, Kowalsky was referred to HCDO by appellant.

2. Kowalsky testified that he turned in lists of his subcontractors, including Merritt, to HCDO from time to time. Merritt testified that he had only one contact with appellant and that was over the phone when Merritt had a problem with a "sale" not concerning Toys for Tots. Merritt identified himself to appellant as working for Kowalsky.

3. The relative percentage received by the telemarketers versus HCDO is the typical split between telemarketers soliciting for virtually every police and fireman's organization.

4. While an exhaustive search of HCDO's records produced no check written by HCDO to Toys for Tots, two checks for $500 were written to "M. Brister's Toys for Children and Funtastic Toys, Constable Abercia," in the first week of December 2000. These were the only two checks found written for toys for children. A deputy from another deputies' union, which was an approved Toys for Tots supporter, testified that he received a check for $500 from HCDO in 1998, 1999, or 2000. This deputy said the check was in response to his request for funds on behalf of Toys for Tots, a request he had made annually to the HCDO Board for many years. Not even the one check the deputy said he had received could be found in the HCDO records.

superiors, who had been informed of the criminal investigation, to receive the bicycles without incident, knowing that the bicycles would have to be turned over to law enforcement investigators to be kept as evidence. Thus, the donation could have been viewed by the jury as an attempt to cover up or mitigate damage. Unlike HCDO, the other deputies' union was an approved supporter of Toys for Tots. The fact that appellant chose to give the bikes through that other union further supports the inference that appellant knew HCDO was not an approved supporter of Toys for Tots. When the HCDO Board found out solicitations had been made for Toys for Tots, it passed a motion to determine how much money had been so received in order to give it to Toys for Tots. HCDO Treasurer, Terry Padilla, refused to cooperate in the effort. Her position was that the checks were payable to HCDO regardless of whether Toys for Tots had been written in the place noting the purpose of the check. At trial, 18 of the 21 alleged complainants, who had written checks totaling $3,000, testified. They would not have sent checks to the telemarketer if they had known that Toys for Tots would not receive the majority of the funds.

Appellant raises eight arguments as to why the evidence is both legally and factually insufficient, but these arguments are beside the point. The point is that appellant knowingly set in motion a scheme, which he knew was not authorized by Toys for Tots, and by which hundreds of donors were deceived into giving thousands of dollars because they thought that most of the money would go to Toys for Tots.

While viewing the evidence in the light most favorable to the verdict does not usually involve an examination of an appellant's side of the story, such an examination here adds further reason why the jury likely chose to believe the State's main witness, Kowalsky, rather than appellant, who also testified, regarding the mechanics of HCDO's fundraising program. Kowalsky testified about a common course of conduct involving other solicitation programs or campaigns in addition to the Toys for Tots program. The usual modus operandi was for appellant to inform Kowalsky of a new charitable entity, Kowalsky would prepare the letter, and appellant would sign it; thereby authorizing the solicitation campaign to go forward. The letter would provide the script for the telemarketers.[5] In this case, Kowalsky

5. Kowalsky testified that the letter provided the script, and Merritt testified that he prepared the script from the letter provided by Kowalsky. Unfortunately, the record does not contain the script Merritt wrote for the Toys for Tots campaign. Instead, defense counsel used a script from another program, the Annual Crime Prevention Program, which apparently had been altered by one of Merritt's telemarketers in order to be used for the Toys for Tots campaign.

Both sides attempted to exploit the similarities and differences between the altered script and the letter appellant signed regarding Toys for Tots. The portions of each pertaining to Toys for Tots are set out for comparison.

The letter stated in regard to the Toys for Tots campaign: "Every year at this time the Harris county Deputies' Organization lends a helping hand of support to the 'Toys for Tots' program. This program provides toys for children of families who cannot afford to do so, and to those children who have no family. Just knowing that there is a light at the end of the tunnel gives hope to these children year after year. Let us all as a community give what we can in order to bring some joy and laughter into the lives of those who are less fortunate that others." The altered script stated regarding the Toys for Tots campaign: "And right now we're working on our Toys for Tots program.... Will one of those [pledges of $300, $200, or $100] be okay for you this year, so the kids as well as the deputies could count on you this y ... ? ...—Kids that don't have par-

could not remember whether he or appellant had come up with the idea for Toys for Tots or whether they had discussed the letter before or after he had submitted it to appellant, but he definitely remembered discussing the letter involving Toys for Tots with appellant either before or after submitting it to appellant for his signature.

Appellant testified, to the contrary, that the letter was prepared by Kowalsky after Kowalsky had asked appellant what were the various causes HCDO had supported over the years. Appellant testified that the letter was merely a thank you letter, intended to show a charity HCDO supported, to be sent after a donation was received. As the concurring opinion mentions, the first line of the letter does thank the donor on behalf of HCDO for the donor's generous support. However, the main portion of the letter, an eight-line paragraph in between two two-line paragraphs, speaks of HCDO lending a helping hand to Toys for Tots, describes in a very touching manner what Toys for Tots does for poor children, and ends with "Let us all as a community give what we can in order to bring some joy and laughter into the lives of those who are less fortunate than others." Thus, the letter itself appears to be more of a solicitation than a thank you for a donation. Indeed, most donations received did not indicate for what charity they were given, so that a letter mentioning only a single charity would not have been a very useful thank you letter. A thank you letter for donors who donated to HCDO would have been more consistent with appellant's story that the contributions were solicited for HCDO and not the charities, but no such letter, if any existed, was produced. Moreover, the only times

that the letter was sent to donors by the solicitors was when they requested it for their records or for verification. Some donors required the letter for verification before they would give. Thus, the record shows that the letter was not used as a thank you letter. *See King v. State*, 174 S.W.3d 796, 811–12 (Tex.App.-Corpus Christi 2005, pet. ref'd) (looking to all facts and circumstances to find that complainant was victim of theft by deception even though she had signed document stating she was giving the money as gift).

Appellant presented Terry Padilla, HCDO Treasurer, as a witness. Padilla testified that she was troubled when she began to notice checks with the Toys for Tots notations because she knew HCDO was not affiliated with the United States Marine Corps Toys for Tots Program. She first contacted Kowalsky who brought in old copies of letters signed by appellant. Padilla then brought the matter to appellant's attention. She testified that appellant looked shocked and immediately made a phone call to the fundraiser to stop fundraising for any cause other than HCDO. Of course, the prosecutor on cross-examination presented the possibility that appellant's look of shock may have been from being caught. Indeed, the record shows no effort made by Padilla or appellant to try to stop depositing the Toys for Tots checks in HCDO's account or to try to refund any Toys for Tots donations. The only action in that regard by appellant was to stop any further solicitation for Toys for Tots, and then to arrange a donation of bicycles to Toys for Tots.

Finally, appellant introduced into evidence the agreed judgment and permanent injunction that resulted from the civil suit

---

ents that can afford Xmas.—And kids that don't have any parents at all."
Both the letter and the script exploit a natural proclivity to support efforts to pro-

vide Christmas gifts for poor children and orphans.

brought by the Harris County Attorney's Office on behalf of the State of Texas against HCDO, appellant, Kowalsky, and Merritt. One of the provisions of that judgment was that HCDO and appellant make a public apology to be published in the Houston Chronicle and the Harris County Star, a newspaper published by HCDO, as follows:

> The Harris County Deputies' Organization, Local No. 154, and Ed Christensen, its president, apologizes to the United States Marine Corps "Toys for Tots" Program and the citizens of Harris County for any misunderstanding or confusion caused by their telephone solicitations in the name of the United States Marine Corps "Toys for Tots" Program in 1998, 1999 and 2000. These solicitations were made without the knowledge or permission of the United States Marine Corps "Toys for Tots" Program and will not be repeated in the future.

This public apology is by HCDO *and* appellant for *their* telephone solicitations in the name of the United States Marine Corps "Toys for Tots" Program.

Faced with the choice of believing appellant's or Kowalsky's version of what the letter was and how it was used, the jury was entitled to believe Kowalsky. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App.2000) (jurors are entitled to accept one version of facts and reject another).

The majority opinion would view the facts of this case as a civil matter akin to theft convictions resulting from otherwise contractual civil disputes as in *Peterson v. State*, 645 S.W.2d 807 (Tex.Crim.App.1983) and *Phillips v. State*, 640 S.W.2d 293 (Tex. Crim.App.1982). This Court distinguished those two cases as involving construction contracts where cash-flow problems made it impossible for contractors to complete a job as originally promised. *See Ellis v. State*, 877 S.W.2d 380, 383 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (upholding conviction for theft by deception when Ellis repeatedly entered into agreements to provide financing for credit-challenged complainants on basis that record established deception, not merely failure to perform). The $1,700 worth of bicycles the majority opinion views as partial performance in this case was given to Toys for Tots after the search warrant had been executed on Merritt's telemarketing operation. Toys for Tots had already been alerted to the investigation, so that the bicycles were received by Marines as evidence to be turned over to law enforcement. This is akin to the delivery of $8000 Ellis claimed was partial performance in *Ellis v. State*, but which this Court found not to be performance under the terms of any contract. *See id.* More importantly, there was no contractual relationship here between HCDO and the donors.

I would hold that the evidence, viewed in the proper light, considering the combined evidence and inferences therefrom, proves beyond a reasonable doubt that appellant intended that donors be deceived into giving money to HCDO that was meant for Toys for Tots and aided the commission of the offense by authorizing the solicitation campaign and setting it in motion by his signature on the solicitation letter. Accordingly, I respectfully dissent from the holding that the evidence is legally insufficient.