Opinion filed September
29, 2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00302-CR

                                                    __________

 

                     CHRISTOPHER
ANDREW MILLER, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                    On
Appeal from the 91st District Court

 

                                                          Eastland
County, Texas

 

                                                      Trial
Court Cause No. 20840

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
jury convicted Christopher Andrew Miller of theft over $200,000 or more and as-sessed
his punishment at confinement for ten years in the Institutional Division of
the Texas Department of Criminal Justice.  Upon the jury’s recommendation the
trial court suspended the imposition of the sentence and placed Appellant on
community supervision for ten years.  We affirm.

            In
two issues, Appellant challenges both the legal and factual sufficiency of the
evidence.  The Court of Criminal Appeals in Brooks v. State, 323 S.W.3d
893, 912 (Tex. Crim. App. 2010), abandoned the factual sufficiency standard, and
we need only consider the sufficiency of the evidence under the legal
sufficiency standard.

            The
standard of review for an appellate court in evaluating the legal sufficiency
of the evidence is to determine whether any rational finder of fact could have
found the existence of the elements of the offense after viewing all of the
evidence in a light most favorable to the verdict. Jackson v. Virginia,
443 U.S. 307, 319 (1979); Brooks, 323 S.W.3d 893; Gibbs v. State, 819 S.W.2d 821, 834 (Tex. Crim. App. 1991).  The appellate court’s duty is not
to sit as a thirteenth juror reweighing the evidence or deciding whether it
believes the evidence established the elements in question beyond a reasonable
doubt.  Gibbs, 819 S.W.2d at 834; Blankenship v. State, 780
S.W.2d 198, 206-07 (Tex. Crim. App. 1988).  The sufficiency test must be applied to the application paragraph in a hypothetically correct jury charge.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  In reviewing the evidence when the appellate court is faced with facts that support conflicting inferences, it must presume that the finder of fact resolved the
conflict in favor of the verdict, and any inconsistencies must be resolved in
favor of the verdict.  Farris v. State, 819 S.W.2d 490, 495 (Tex. Crim.
App. 1990).

            EBAA
Iron, Inc. is a company located in Eastland, Texas, that manufactures clamps
that hold underground water mains together.  Appellant was a vendor to EBAA, at
first providing trucking services.  EBAA uses plastic clips to hold the pipe
assemblies together during transport, and Appellant proposed that he supply
these clips to EBAA.  EBAA agreed, but the parties never had a written contract. 
EBAA did not keep a large stockpile of clips on the premises, and Appellant was
to bring the clips on an as-needed basis.

            Earl
T. Bradley, the president of EBAA, was the person who signed most of the checks
for accounts payable.  He noticed that he was signing a large number of checks
to Appellant’s company for the plastic clips.  It seemed to Bradley that
Appellant was being paid for a number of clips far in excess of what the
company actually used, and he discussed his concerns with the company’s
accounts payable clerk, Lois “Ginger” Vaughn.  Vaughn personally received the
invoices from Appellant.  Bradley looked for a large stockpile of clips at the
plant facility, but found none.

            Appellant
was not the only supplier of clips to EBAA.  Another company, Metro Custom
Plastics, also supplied the clips.  When Metro shipped clips to EBAA, it
included a packing slip with the shipment that reflected what Metro had shipped. 
Most vendors to EBAA followed the packing slip procedure, but Appellant did not
include such a document with his shipments.   Because Appellant did not include
a packing slip with his shipments, EBAA’s controller, Gregory Leon
Christiansen, could not verify how many clips Appellant actually shipped to
EBAA.

            Christiansen
analyzed the number of clips that had been delivered by the other vendor, the
number of clips that had actually been used, the number of clips that were on
hand, and the number of clips for which Appellant had billed EBAA.  Based on
his analysis of the data, Christiansen concluded that Appellant had billed EBAA
for some seventy-eight pallets of clips that were not delivered.  EBAA paid
Appellant $951,148.27 for clips that he never delivered.

            When
Appellant was confronted with the fact that he had billed for a large number of
clips that had not been delivered, he “acted surprised.”  Appellant made an
offer to work the amount off, but Bradley felt it was far too large an amount
for that kind of arrangement.

            David
Hullum, a Texas Ranger, was called to investigate the theft.  Ranger Hullum
executed a search warrant for Appellant’s place of business in an effort to
find documentation.   When Ranger Hullum interviewed Appellant, he stated he
did not know how many clips he manufactured in a year.  Appellant also told
Ranger Hullum the name of the company from which he obtained the plastic that
he used to make the clips and he also told Ranger Hullum the number of clips that
he could make from a foot of plastic.  There was only one company from which he
ordered the plastic for the clips:  Nationwide Plastics.

Ranger Hullum did not believe that Appellant was forthcoming
with information in that interview.  Ranger Hullum felt that a person who was
running the kind of business that Appellant ran should have had answers for the
questions Ranger Hullum asked.  Appellant admitted that he only delivered clips
when EBAA ordered them; he never took it upon himself to deliver clips without
an order.

            Ranger
Hullum asked Appellant about a letter that was signed by the sales person for
his plastic supplier, Donna O’Donald.  This letter purported to give Appellant
the amounts of plastic that he ordered from the supplier during the relevant
time period.  Appellant never definitively said that the amounts in the letter
came from him or the supplier.  Appellant was equivocal when Ranger Hullum
asked him about the letter, at first saying that his sister had requested the
letter.   Later, Appellant admitted to Ranger Hullum that O’Donald prepared the
letter at his request.

            Donna
O’Donald sold nylon rolls of plastic to Appellant for about seven to eight
years.   Appellant called her and asked her to give him records of all the nylon
rolls she had sold to him, but she told Appellant that she did not keep such
records.  Appellant told her that he kept such records and asked her to sign a
letter, containing the amounts of nylon she allegedly sold to him, that he would
fax to her.

O’Donald had received some distressing health news and was
about to go to her doctor.  But, Appellant insisted that she sign the letter
and fax it to him before she went to the doctor.   O’Donald, wanting to please
her customer, signed the letter even though she had not actually read it.  This
was the same letter that Ranger Hullum had asked Appellant about and about
which he was so evasive.  When O’Donald actually read the letter, she realized
that she had not sold Appellant nearly as much plastic as the amount written in
the letter by Appellant.

Rowdy Rollins, a former worker at EBAA, testified that EBAA
had changed the material specification of the clip and had to dispose of “seven
pallets” worth of clips made of the old material.  There were approximately
500,000 clips on a pallet.  Christiansen testified that he was not aware that
EBAA had destroyed the clips, but he would expect that, if something like that had
happened, he would have been notified.  Rollins did not say when EBAA had
destroyed the clips.  He also testified that some thirty pallets of clips were sent
to EBAA’s plant in Cordele, Georgia.

The evidence in this case is legally sufficient.  Appellant
was indicted for theft by deception for the series of thefts that consisted of
sending invoices for plastic clips that had not been delivered but for which he
received payment.  See Tex. Penal
Code Ann. § 31.03(b)(1) (Vernon 2011).  Deception is defined as
“creating or confirming by words or conduct a false impression of law or fact
that is likely to affect the judgment of another in the transaction, and that
the actor does not believe to be true.”  Id. § 31.01(1)(A).

A jury is entitled to draw inferences of intent from the acts,
words, and conduct of a defendant.  Christensen v. State, 240 S.W.3d 25,
32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d).  Intent is most often
proved through circumstantial evidence, rather than through direct evidence.  Id.
 In this case, the record contains sufficient evidence that Appellant
deceived EBAA by sending it invoices for items he did not deliver.  First, there
is a huge disparity between the amount of clips Appellant delivered and the
amount for which he billed.  As noted above, Appellant was in the habit of
personally delivering the invoices for clips he allegedly delivered.  Each
invoice Appellant presented to EBAA for which no product was delivered was an
act from which the factfinder could properly draw an inference of deception.

Also, when Appellant was confronted with the actual numbers,
he gave false information to show that the number of clips he delivered and the
number for which he billed were the same.  While there was evidence that EBAA
destroyed some of the plastic clips, it was the jury’s province to believe or
disbelieve this testimony.  See Limuel v. State, 568 S.W.2d 309,
311 (Tex. Crim. App. 1978) (a jury may accept or reject any or all of the
testimony of any witness).  In any event, the evidence showed that the amounts
allegedly destroyed or sent off-premises were less than one-half of the number
of clips for which Appellant billed EBAA that Appellant did not deliver.  The
evidence being sufficient, Appellant’s first issue is overruled.  As noted
above, we need not consider Appellant’s second issue.

The judgment of the trial court is affirmed.

 

 

ERIC KALENAK

JUSTICE

September 29,
2011

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  McCall, J.,

Kalenak, J., and Hill, J.[1]









[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.