# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-06-00648-CR

---

**Albert Jermain Clifton, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-06-203379, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Albert Jermain Clifton appeals his convictions on two counts of aggravated robbery. Tex. Penal Code Ann. § 29.03(a)(2) (West 2003). After the jury found appellant guilty of both counts in a single indictment, the trial court assessed punishment when appellant pled "true" to allegations that he had been previously convicted of two felonies. The trial court imposed sentences of eighteen years' imprisonment on each count. The sentences are to run concurrently.

### POINTS OF ERROR

Appellant advances four points of error. First, appellant challenges the legal sufficiency of the evidence to sustain the convictions for aggravated robbery based on the law of parties. Second, appellant contends that the trial court erred in not giving appellant's special requested jury charge on the State's burden to prove that appellant was criminally responsible for the aggravating element of each offense. Third, appellant urges that the trial court erred in overruling

the motion to suppress physical evidence. Fourth, appellant asserts that the trial court abused its discretion in admitting into evidence a co-conspirator's hearsay statement.

## BACKGROUND

About 6:45 a.m. on the morning of June 24, 2006, Hildegardo Garcia and his teenage son, David, parked their Ford F-150 truck on Battle Bend Drive in Austin, Travis County, near the KIA automobile agency. They were to pick up a friend of Hildegardo's who owned a ranch where they were to lay water lines later that day. David Garcia testified that he saw what appeared to be a gold-colored Chrysler P.T. Cruiser stop at a nearby stop light and then the driver backed the motor vehicle near their truck. David revealed that a young, slightly built Hispanic male wearing a red shirt and baggy pants got out of the passenger side of the gold-colored car. He approached David's father, Hildegardo, who was in the driver's seat of the truck. The Hispanic male, later identified as Paul Serrato, pointed a silver and black pistol at Hildegardo and demanded money. David said that his father struggled to get his wallet out of his pants, then opened his wallet to let the dollar bills fall to the floorboard of the truck. His father then showed the empty wallet to Serrato indicating that he had no money. At this point, according to David, Serrato came around the front of the truck to the passenger side where David was seated next to an open window. Serrato pointed the pistol at David's chest and David began picking up the money from the floorboard. David testified that at this time a large African-American male, six foot or so tall and twice the size of Serrato, got out of the driver's side of the gold-colored car, wearing a dark shirt with a red towel around his neck. He was later identified as appellant Albert Clifton. David did not see any weapon in appellant's possession, but noted that appellant approached his father's side of the truck while

2

Serrato held the pistol on him on the other side of the truck. It appeared to David that appellant was talking to his father while he was handing money to Serrato at gunpoint. Appellant then looked at David and, said to David "yeah, you too." David interpreted this to mean that David should also surrender his money. David estimated that he handed Serrato $150. David and his father were instructed by Serrato to drive away, that they would be followed, to throw away their cell phones, and not to call the police. Appellant got back into the driver's seat of the gold car and Serrato got in the passenger's seat. David reported that they were followed by the gold car for some distance, but when his father turned off the access road into a street, the gold car drove onto I-H 35. A partial Texas license plate number "711" was observed on the gold-colored car. David and his father drove to a friend's house and called the police.

Hildegardo generally corroborated his son's testimony. Both testified that they had not consented to the taking of their money by Serrato and that they had been placed in fear of their lives at gunpoint. Hildegardo testified that there was $300 in his wallet, far more than David estimated. Hildegardo recalled appellant got out of the gold car at the same time as Serrato and then stood by that car. He did not remember appellant talking to him or saying anything to David.[1] At trial both Hildegardo and David Garcia made in-court identifications of appellant as a participant in the armed robberies.

Austin Police Officers Luis Delgado and James Morgan responded to the Garcias' call and interviewed them at the friend's home where they had driven. Officer Delgado talked

---

[1] Hildegardo Garcia testified by use of a Spanish language interpreter. The prosecutor pointed out in jury argument that appellant had briefly spoken to David in English that Hildegardo may not have understood.

with Hildegardo in the Spanish language while Officer Morgan discussed the events with David. Officer Delgado passed his information to Officer Morgan, who in turn gave information to the police dispatcher who issued a BOLO (Be on the Lookout) to all police units. This included the description of the two assailants, the goldish P.T.-type Cruiser, and the silver and black pistol. The two police officers returned to their substation to write their reports. Within a short time, they learned that suspects matching the descriptions in the BOLO had been detained. They went to the scene of the detention where the vehicle and the suspects matched the descriptions given by the Garcias.

Austin Police Officer Keith Wade was on patrol on the morning of Saturday, June 24, 2006. He had heard a BOLO about an aggravated robbery on Battle Bend Road which gave the descriptions of the two suspects who had used a handgun. The BOLO described the vehicle as a Chevrolet HHR which resembled a P.T. Cruiser with a partial license plate number "711." As Officer Wade later passed the Texas Department of Public Safety office, Driver's License Division, at 4719 South Congress, he observed a gold-colored vehicle matching the BOLO description parked in the front parking lot. This location was about a mile and a half from the Battle Bend address given in the BOLO, and it was two hours or so after the alleged robbery. Officer Wade turned his vehicle around and drove past the gold vehicle again. He saw a young Hispanic male in the driver's seat with the window down. He could not tell if anyone else was in the gold vehicle because of its tinted windows and the heavy rain. The dispatcher was called and back-up units were requested.

Officer Wade turned his vehicle around again and drove back, approaching the gold vehicle in the parking lot, but stopping about seventy-five feet away to await the arrival of the

4

additional police units. He then observed that the car was a Chevrolet HHR, not a P.T. Cruiser, with a partial license plate number "731" instead of "711." Officer Wade soon observed the Hispanic male get out of the gold vehicle with a red gas can and move to the rear of the vehicle. When the Hispanic male made eye contact with Officer Wade, he dropped the gas can and started back to the driver's door of the gold vehicle.

Officer Wade became concerned because if the Hispanic male got to the car, an automobile chase would ensue on slick rainy streets, endangering the suspects, the police, and the public. He pulled his police unit within fifteen feet of the gold vehicle, drew his pistol, got out of the police unit, and ordered the Hispanic male to get on the ground. The suspect did not want to comply but eventually did. Before securing the suspect, Officer Wade heard a noise in the gold vehicle and he saw the car rock or move. Through a back window, the officer saw a silhouette inside the car. He yelled to that individual to keep his hands up and "to stay right there." The suspect inside the car was slow to respond and continued to move. Officer Wade could not hear what the suspect inside the car was saying. Officer Wade knew a handgun had been used and was possibly in the possession of one of the suspects. At this time, the Hispanic male, Serrato, on the ground yelled toward the car, "waste him, dog, waste him" and "shoot him and get out of here." Officer Wade was still the only officer on the scene. No shots were fired. Officer Jesse Barunda arrived and took steps to secure Serrato on the ground. Officer Wade was then able to get the man, later identified as appellant, out of the gold vehicle. No weapon was found on appellant's person. Officer Wade then saw a handgun on the floorboard of the car on the driver's side. He left the

weapon there for the crime scene unit. Appellant was wearing a red bandana around his neck which was apparently the red towel David Garcia thought he saw on appellant.

Officer Rodrick Mayberry arrived on the scene. He described appellant as an African-American, 6' 3" tall, and weighing about 300 pounds. Appellant had $779 on his person when arrested. At the jail booking, some valuables were taken from appellant including what appeared to be diamond earrings that David Garcia remembered appellant wearing at the time of the robberies.

Lee Hernandez, a crime unit specialist, arrived on the scene of the arrests and took custody of the handgun in the car and its magazine. There was a bullet in the chamber. She also secured $216.35 in cash taken from Serrato. Hernandez swabbed the handgun grip and trigger for DNA purposes. On June 27, 2006, in accordance with a search warrant, a buccal swab was taken from appellant's mouth.

Cassie Carradign, a forensic scientist and DNA supervisor at the Austin Police Department testified that appellant's known DNA sample matched the DNA profile taken from the pistol's handle or grip.

Jason Flator, a firearms expert, testified the handgun was a Smith and Wesson firearm in working order and it was a deadly weapon. The magazine also seized was a Smith and Wesson magazine with ten live rounds therein. Appellant called no witnesses and rested and closed with the State at the guilt/innocence stage of the trial.

**LEGAL SUFFICIENCY**

In his first point of error, appellant challenges the legal sufficiency of the evidence to sustain his convictions for aggravated robbery under the law of parties. In determining whether

6

the evidence is legally sufficient to support the judgment of conviction, we view the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Cardenas v. State*, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The evidence viewed in this light, and all reasonable inferences drawn therefrom, are evaluated in an appellate review. *See Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The reviewing court must consider all evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard of review is the same for both direct and circumstantial evidence. *Kitzner v. State*, 994 S.W.2d 180, 189 (Tex. Crim. App. 1999); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). In its review of the legal sufficiency of the evidence, the appellate court does not realign, disregard or weigh the evidence. *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). The jury is the trier of fact, is the judge of the credibility of the witnesses and the weight to be given the testimony, and may accept or reject all or any of a witness's testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Sharpe v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *See Matson*

*v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1993); *Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1990, pet. ref'd).

Pertinent to both counts of the indictment, section 29.02 provides in part:

> (a)  A person commits an offense if in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property he:
>
> . . . .
>
> > (2)  intentionally and knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code Ann. § 29.02(a)(2) (West 2003).

Robbery can become aggravated robbery if the robbery is committed by use or exhibition of a deadly weapon.[2]  Tex. Penal Code Ann. § 29.03(a)(2) (West 2003).

Appellant was charged with aggravated robbery of Hildegardo Garcia in the first count of the indictment and with aggravated robbery of David Garcia in the second count.  The indictment alleged that each count of robbery became aggravated by the use and exhibition of a deadly weapon, to wit:  a firearm.

---

[2]  A deadly weapon is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting serious bodily injury or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury.  Tex. Penal Code Ann. § 1.07 (a)(17)(A), (B) (West 2006).

A "firearm" means any device designed, made, or adapted to expel a projectile through a barrel by using energy generated by an explosion or burning substance or any device readily convertible to that use.  Tex. Penal Code Ann. § 46.01(3) (West 2003).

The indictment on its face appeared to charge appellant as a primary actor in both counts. There were no allegations that appellant was a party to the offenses or that the law of parties was applicable. Such allegations in an indictment are not necessary in order for the State to proceed in the case on the theory of parties. *Marble v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002); *Jackson v. State*, 898 S.W.2d 896, 898 (Tex. Crim. App. 1995); *Pesina v. State*, 949 S.W.2d 374, 377 (Tex. App.—San Antonio 1997, no pet.). The State's theory was that appellant was guilty as both a primary actor and a party. The trial court submitted the case to the jury only under the law of parties.

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

Tex. Penal Code Ann. § 7.01(a) (West 2003).

Section 7.02 of the Penal Code provides in pertinent part:

> (a) A person is criminally responsible for the offense committed by the conduct of another if,
>
> . . . .
>
> > (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Tex. Penal Code Ann. § 9.02(a)(2) (West 2003).

To convict a person as a party it is first necessary to prove the guilt of another person as the primary actor beyond a reasonable doubt. *Richardson v. State*, 879 S.W.2d 874, 882

9

(Tex. Crim. App. 1993). When a party is not the "primary actor," the State must prove beyond a reasonable doubt conduct constituting the offense charged, plus an act by the defendant done with intent to promote and assist such conduct. *Beir v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Christensen v. State*, 240 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Pesina*, 949 S.W.2d at 382. In order to establish liability as a party in addition to the illegal conduct by the primary actor, it must be shown that the accused harbored the specific intent to promote or assist the commission of the offense, i.e., aggravated robbery. *Christensen*, 240 S.W.3d at 31; *Pesina*, 949 S.W.2d at 382.

The evidence must show that the parties were acting together to accomplish their common purpose. *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977). The agreement to accomplish a common purpose, if any, must be made before or contemporaneous with the criminal event, but in determining whether one has participated in an offense, the court may examine events, before, during, and after the commission of the offense. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006); *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref'd).

While an agreement of the parties to act together in common design can seldom be proved by direct evidence, reliance may be had on the actions of the parties showing by direct or circumstantial evidence an understanding and common design to do a certain act. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986); *Pesina*, 949 S.W.2d at 383. In fact, circumstantial evidence may be sufficient alone to establish one as a party to an offense. *Powell*, 194 S.W.3d at 506; *Wygal*, 555 S.W.2d at 469.

The State must show more than mere presence to establish participation in a criminal offense. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981); *Pesina*, 949 S.W.2d at 383. Evidence is sufficient, however, to convict under the law of parties where the accused is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).

To convict a defendant as a party to the offense of aggravated robbery involving the use or exhibition of a deadly weapon, a firearm, the State must prove that the defendant was criminally responsible for the primary actor's use or exhibition of a firearm during the commission of the offenses. *See Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986); *Brown v. State*, 212 S.W.3d 851, 860 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Wooden v. State*, 101 S.W.3d 542, 547-48 (Tex. App.—Fort Worth 2003, pet. ref'd).

The undisputed direct and circumstantial evidence shows that Paul Serrato was the primary actor in the commission of the aggravated robberies of Hildegardo and David Garcia by taking money from them by the use and exhibition of a deadly weapon, a firearm, and placing them in fear of death or serious bodily injury. Both of the Garcias identified appellant as being present at the scene and acting together with Serrato and aiding him in the robberies.

Intent can be inferred from the acts, words, and conduct of an accused. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1985); *Romo v. State*, 593 S.W.2d 690, 693 (Tex. Crim. App. 1980). Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). Since mental culpability is of such a nature that it generally must be inferred from circumstances under which the prohibited act occurred, the trier

11

of fact may infer intent from any facts in evidence which tend to prove existence of such intent. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

Here, the evidence showed appellant drove Serrato to the scene of the robberies. Appellant was present when Serrato was using and exhibiting a pistol demanding money from the Garcias. When Serrato went to the passenger side of the Garcia truck, appellant was outside the gold-colored car preventing any escape from the driver's side of the Garcia truck. David Garcia recalled appellant leaning in at the driver's side of the truck and telling him, "yeah, you too" while Serrato was collecting money at gunpoint. Appellant was the driver of the getaway car and followed the Garcia truck for awhile to prevent them from immediately calling the police. Several hours later and a mile and a half from the scene of the robberies, appellant was found in the gold-colored car with Serrato nearby. DNA evidence tied appellant to the black and silver Smith and Wesson pistol also found in the car and identified by the Garcias as appearing to be the weapon used by Serrato. Nearly eight hundred dollars was found on appellant's person.

Viewing all the evidence, direct and circumstantial, in the light most favorable to the jury verdict, we conclude that any reasonable trier of fact could have found beyond a reasonable doubt all of the essential elements of each count of the indictment, including the aggravating element of each offense under the law of parties. We reject appellant's claim that the evidence was legally insufficient to convict him as a party to the two aggravated robberies. The first point of error is overruled. *See Escobar v. State*, 28 S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref'd); *Johnson v. State*, 6 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *Brewer*

*v. State*, 852 S.W.2d 643, 647 (Tex. App.—Dallas 1993, pet. ref'd); *Webber v. State*, 757 S.W.2d 51, 53-55 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).[3]

## JURY CHARGE

In his second point of error, appellant urges that the "trial court erred in failing to properly instruct the jury regarding the State's requirement to prove appellant criminally responsible for the aggravating element and was harmful to appellant."

The trial court submitted both counts of aggravated robbery to the jury only on the theory of appellant's guilt as a party. Appellant does not complain of either the abstract or definitional portions of the jury charge or the application paragraphs submitting the law of parties. Appellant calls our attention solely to a subsequent portion of the charge to which he offered a special requested charge or amendment. *See* Tex. Code Crim. Proc. Ann. art. 36.15 (West 2006). In section "12" of the charge, the trial court generally instructed the jury on the presumption of innocence and that the burden of proof was on the State beyond a reasonable doubt.

In the second paragraph of this section, the trial court stated:

> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

---

[3] Appellant argues that there was a conflict between Hildegardo Garcia's testimony and that of David Garcia as to appellant's activities at the scene of the crimes. Contrary to appellant's argument, appellant would be guilty beyond a reasonable doubt as a party to the offenses under either version of the facts. Moreover, the jury could have reconciled any conflict against appellant.

13

Appellant requested that the trial court amend the above-quoted paragraph by inserting:

> In order to convict a defendant as a party to an aggravating offense, the State must prove that the defendant was criminally responsible, as that term is herein defined for the aggravating element.

The trial court overruled the requested charge and stated that such an addition would be confusing to the jury and that the matter was adequately covered by other portions of the charge. It appears that the requested charge was for the purpose of singling out the aggravating element of each offense, on which appellant concluded the State's evidence was the weakest under the law of parties. Appellant apparently did not consider the trial court's instruction as to each and every element sufficient.

Appellant cites no authority for his contention, but does cite a line of jury charge error cases beginning with *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). When a defendant has properly preserved a jury charge issue for review, the appellate court must first determine under the *Almanza* harm analysis if error actually occurred. *See Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998). An examination of the entire record here does not show that any provision of article 36.19[4] was disregarded. There is no error for the purpose of the *Almanza* harm analysis. *Posey*, 966 S.W.2d at 60.

The requested charge could have, as the trial court concluded, caused the jury confusion, and could have resulted in the trial court expressing an opinion on the weight of

---

[4] Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006).

14

the evidence as prohibited by article 36.14[5] by singling out one element. The matter involved was adequately covered by the parts of the jury charge to which appellant had no objection. The trial court did not err in refusing the requested charge. The second point of error is overruled.

## PRETRIAL MOTION TO SUPPRESS

In his third point of error, appellant contends that the "trial court erred in failing to grant appellant's motion to suppress the physical evidence." Before discussing the trial court's ruling, we examine the law applicable to pretrial suppression hearings.

## THE BURDEN OF PROOF

When a defendant seeks to suppress evidence by a pretrial motion on the basis of the Fourth Amendment to the United States Constitution, he, as the movant, bears the burden of producing evidence that defeats the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). A defendant meets this initial burden of proof by establishing that a search or seizure occurred without a warrant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002); *Russell*, 717 S.W.2d at 9. At this point, the burden shifts to the State to prove that the search or seizure was reasonable without a warrant under the totality of the circumstances. *Russell*, 717 S.W.2d at 9. If, however, the State introduces or produces evidence of an executed search warrant based on probable cause reflected in its underlying affidavit, the burden shifts back to the defendant to show the invalidity of the search

---

[5] Tex. Code Crim. Proc. Ann. art. 36.14 (West 2006).

15

warrant. *Ford*, 158 S.W.3d at 492; *Russell*, 717 S.W.2d at 9; *see also Davidson v. State*, 249 S.W.3d 709, 717-18 (Tex. App.—Austin 2008, pet. ref'd).

## STANDARD OF REVIEW

We generally review a trial court's ruling on a pretrial suppression motion for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). The trial court's ruling should be upheld so long as it is within the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). This is the rather common standard of review regarding the admissibility of evidence.

When we review a trial court's ruling on a motion to suppress, we give great deference to the trial court's determination of historical facts supported by the record, while we review the application of the law to the facts *de novo*. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Dyer v State*, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327; (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 85-89 (Tex. Crim. App. 1997).[6]

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*,

---

[6] For a fuller discussion of the standard of review, *see Amador v. State*, 214 S.W.3d 666, 673 (Tex. Crim. App. 2007), and *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006).

123 S.W.3d 401, 404 (Tex. Crim. App. 2003); *State v. Steelman*, 93 S.W.3d 102, 103 (Tex. Crim. App. 2002); *Ross*, 32 S.W.3d at 856.

## THE TRIER OF FACT

The trial court is the trier of fact at a pretrial hearing on a motion to suppress evidence. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1997). The trial court is free to believe or disbelieve all or any part of a witness's testimony, even if the testimony is uncontroverted. *Ross*, 32 S.W.3d at 855. In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

## A SPECIALIZED OBJECTION

A pretrial motion to suppress evidence under article 28.01(6)[7] is nothing more than a specialized objection to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). Therefore, it must meet the specificity requirements of an objection. *See* Tex. R. App. P. 33.1(a)(1)(A); *Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.). Here, by his "supplemental" motion to suppress, appellant, in order to avoid procedural default, specified the gun, the DNA swabs, and the test results as the items he wanted to suppress. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Martinez v. State*, 17 S.W.3d 677, 682-83 (Tex. Crim. App. 2000).

---

[7] Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 2006).

On October 17, 2006, immediately prior to the trial, the trial court conducted a hearing on appellant's amended motion to suppress evidence. After a brief colloquy about the burden of moving forward with the evidence, appellant's counsel called two police officers as witnesses, Keith Douglas Wade and Luis Delgado.[8] These were the only witnesses to testify at the suppression hearing. Officer Delgado was not present when appellant was detained and little of his testimony was truly relevant to the suppression issues.[9]

Officer Wade's suppression testimony was virtually the same as at trial previously cited in the sufficiency of evidence discussion. We need not repeat that testimony in great detail, but will note that the trial court's ruling is based on the testimony at the suppression hearing as the issues involved were not consensually relitigated at trial. *See Rachel v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1995).

Officer Wade recalled that the BOLO had reference to two different robberies, one in the Henry section and another in the Frank section of the City of Austin; the latter being the one on Battle Bend Road. He understood the suspects were armed and in a gold Chevrolet HHR that

[8] The trial court suggested that "this" is "a warrantless situation," but there was no stipulation of evidence to that effect. The prosecutor also insisted that appellant had the burden of proof to establish his standing to complain of the items seized. Without much argument, appellant called the police officers as witnesses. The State now concedes that under the circumstances, appellant had standing to contest his detention and the subsequent search. *See Brendlin v. California*, 551 U.S. 249 (2007). No claim of misplacement of the burden of proof has been advanced.

[9] Officer Delgado interviewed the Garcias shortly after they had been robbed. He made a report detailing a description of the suspects. His report was used in part as the basis of the BOLO heard by Officer Wade. Appellant complains that Delgado's description of the suspects was in greater detail than Wade's recall of the BOLO. Officer Delgado, of course, did not issue the BOLO which was also based on a reported robbery other than the ones alleged here.

resembled a P.T. Cruiser.  He was given a description of both suspects in the BOLO.  Several hours after the robbery on Battle Bend Road and a mile and a half from that location, Officer Wade encountered the two suspects in the parking lot of the DPS office on South Congress Avenue, which was closed that Saturday.  This encounter discussed earlier need not be repeated here.

At the conclusion of the suppression hearing, the trial court overruled the supplemental motion to suppress physical evidence.  It made no written findings and conclusions of law.  None were requested.[10]  The trial court did dictate into the record a running recitation of the largely undisputed facts developed, and it held that the detentions of appellant and the Hispanic male were "reasonable."  The trial court further found that appellant was legally arrested, and that at the time of detention, it was learned that both suspects had outstanding arrest warrants, and that the search and seizure "was not unreasonable."

The basis of appellant's argument at the suppression hearing was that his detention was unlawful under the totality of the circumstances, that his subsequent arrest, and the search and seizure were all invalid under the Fourth Amendment.

The United States Supreme Court has recognized three distinct types of police-citizen interactions:  (1) arrests, which must be supported by probable cause, *see Brown v. Illinois*, 422 U.S. 590, 601 (1975); (2) brief investigatory stops, which must be supported by reasonable suspicion, *see Terry v. Ohio*, 392 U.S.1, 25-26 (1968); and (3) brief encounters between police and citizens which

---

[10] "When requested by the losing party, the trial court is required to file findings of fact and conclusions of law regarding its ruling on the motion to suppress evidence.  *See State v. Oages*, 210 S.W.3d 643, 644 (Tex. Crim. App. 2006); *State v. Cullen*, 195 S.W.3d 696, 698-99 (Tex. Crim. App. 2006).  Both of these cases involved state appeals.

require no objective justification. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). Police may approach and question an individual in a public place without implicating the Fourth Amendment to the United States Constitution. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983).

Here, the crux of appellant's complaint is that Officer Wade had no reasonable suspicion to justify the *Terry* or investigative detention stop of the Hispanic male or appellant. An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). These facts must amount to more than a mere hunch or suspicion. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2002).

The foregoing is an objective standard that disregards any subjective intent of the officer making the detention or stop and looks solely to whether an objective basis for the detention or stop exists. *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530. A reasonable-suspicion determination is based on the totality of the circumstances. *Neal*, 256 S.W.3d at 280; *Ford*, 158 S.W.3d at 492-93. In conducting a totality of the circumstances determination, we apply the standard of review applicable to motions to suppress evidence discussed above. *See Garcia*, 43 S.W.3d at 530. In short, we give almost total deference to the trial court's determination of the

20

actual, facts but we review *de novo* whether those facts are sufficient legally to give rise to reasonable suspicion. *Id.* Will a *de novo* review of the circumstances here support the trial court's conclusion that reasonable suspicion did in fact exist? The answer is yes.

Here again, we need not repeat the evidence concerning Officer Wade's encounter with appellant and Serrato in the parking lot of the DPS Office. Based on the facts found by the trial court and supported by the record and our review of law *de novo* it was reasonable under the totality of the circumstances for Officer Wade to suspect that Serrato (the Hispanic male) and appellant had engaged in, were engaging in, or would soon be engaged in criminal activity. We find that the *Terry* detention of appellant, his subsequent warrantless arrest based on probable cause and an outstanding warrant, and the search of his person and vehicle incident to his arrest to be proper. The trial court did not abuse its discretion in overruling the motion to suppress physical evidence. The third point of error is overruled.

## HEARSAY

In the fourth point of error, appellant argues that the trial court erred in allowing, over objection, the admission of a co-conspirator's hearsay statement, "waste him, dog, waste him . . . shoot him and get out of here." Appellant contends that the hearsay statement was admitted by the trial court under rule 801(e)(2)(E) of the Texas Rules of Evidence without a showing that the statement was made in the course and furtherance of the conspiracy. The rule, concerning statements that are not hearsay, provides: "The statement is offered against a party and is a statement by a co-conspirator during the course and in the furtherance of the conspiracy." Tex. R. Evid. 801(e)(2)(E).

21

Appellant urges that the termination of a conspiracy renders statements by a co-conspirator inadmissable. *See Deeb v. State*, 815 S.W.2d 692 (Tex. Crim. App. 1991).

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); *Montgomery*, 810 S.W.2d at 379-80.

The Texas Rules of Evidence prohibit the admission of hearsay evidence except as provided by statute or other rule prescribed pursuant to statutory authority. *See* Tex. R. Evid. 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Thus, a statement not offered to prove the truth of the matter asserted is not hearsay. *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *Stafford v. State*, 248 S.W.3d 406, 407 (Tex. App.—Beaumont 2008, pet. ref'd). An out-of-court statement which is not offered to prove the truth of the matter asserted therein, but is offered for some other reason, is not hearsay. *See Martinez v. State*, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000); *Guidry*, 9 S.W.3d at 152; *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992) *overruled on other grounds*, *Maxwell v. State*, 48 S.W.3d 196, 200 (Tex. Crim. App. 2001); *Stafford*, 248 S.W.3d at 407; *Lopez v. State*, 200 S.W.3d 246, 254 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Lee v. State*, 51 S.W.3d 365, 370 (Tex. App.—Austin 2001, no pet.). Expressed another way, an extrajudicial statement that is offered for the purpose of what was said rather than the truth of matter asserted or the truth of what was said is not hearsay. *See Dinkins*, 894 S.W.2d at 347;

*McKay v. State*, 707 S.W.2d 23, 33 (Tex. Crim. App. 1985); *Corimer v. State*, 955 S.W.2d 161, 162 (Tex. App.—Austin 1997, no pet.).

In 2A Steven Goode, Olin Guy Wellborn, III and Michael Sharlot, *Texas Practice: Courtroom Handbook on Texas Evidence*, rule 801(a)-(d) at 541, the commentators stated:

> An out-of-court statement is not inadmissable as hearsay if it has relevancy apart from the truth of the matter that it asserts or implies. If the making of the statement is itself relevant evidence that the statement was made is not barred by the hearsay rule.

In *Yancy v. State*, 199 S.W.3d 293, 307 (Tex. App.—Corpus Christi 2006, pet. ref'd), it was held that the trial court could have reasonably concluded that the documents were not hearsay because they were not offered for the truth of the matter asserted but to show the circumstances surrounding the investigation and leading to Yancy's arrest. *See also Parker v. State*, 192 S.W.3d 801, 807 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("[W]ithout the testimony of the information Officer Walker had received the jury would have been deprived of an understanding of the events leading up to appellant's arrest."); *Davis v. State*, 169 S.W.3d 673, 675-76 (Tex. App.—Fort Worth 2005, no pet.) (testimony of police detective about anonymous tips to show why investigation focused on defendant); *Cano v. State*, 3 S.W.3d 99, 110 (Tex. App.—Corpus Christi 1999, pet. ref'd) (officer's testimony that he had received information about drugs being sold at residence of defendants was not offered for truth of matter asserted, but to assist jury's understanding of events by providing context for officer's subsequent action); *Marsh v. State*,

800 S.W.2d 607, 609 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (deputy's testimony was admitted, not for truth of matter asserted, but rather to indicate circumstances surrounding another officer's arrest of suspects).[11]

In the instant case, Officer Wade's testimony about the Hispanic male's statement "waste him, dog, waste him" and "shoot him, and get out of here," was not hearsay under the circumstances described. Officer Wade was attempting to arrest or detain the Hispanic male while appellant was in a nearby car. The statement was not offered for the truth of the matter asserted but rather to provide the jury the context in which appellant was eventually arrested and not to deprive the jury of an understanding of those events. The evidence was properly admitted on this basis even though the trial court did not use this basis for its overruling of the hearsay objection to Officer Wade's testimony. A trial court's ruling on the admission of evidence, if supported by the record and correct under any theory of the law applicable to the case will be upheld, even if the trial court gave a different or wrong reason for its ruling. *See Stevens*, 235 S.W.3d at 740; *Steelman*, 93 S.W.3d at 107; *Spann v. State*, 448 S.W.2d 128, 130 (Tex. Crim. App. 1969).

On appeal, the State for the first time urges that, in addition to rule 801(e)(2)(E), the trial court was correct in overruling the hearsay objection on the basis of rule 803(2) of the Texas Rules of Evidence. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or

---

[11] For additional cases in this area of admission of evidence, *see In re Bexar County Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 188-89 (Tex. 2007); *Scott v. State*, 222 S.W.3d 820, 831 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

condition." Tex. R. Crim. Evid. 803(2). The availability of the declarant as a witness is immaterial under the rule.

The State relies on *Wilkerson v. State*, 933 S.W.2d 276, 278-79 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). There, an undercover officer and an informer went to appellant's house to buy drugs. Appellant would not sell the officer a $20 rock of cocaine because he did not know the officer. Patricia Lusk, who was present, announced that she was appellant's partner and took the $20. Appellant then handed the cocaine to the informer. A signal was given and the arrest team came into the house. Appellant and Lusk ran to the back of the house with Lusk yelling, "Flush the dope."

The *Wilkerson* court held that the undercover officer's testimony as to Lusk's "Flush the dope" statement was not hearsay under rule 803(2) because the circumstances indicated that Lusk was under the stress and excitement caused by the arresting team's approach at the time of her contemporaneous statement. Thus, the trial court there did not err in overruling the hearsay objection. *Id*. at 279.

In the instant case, the Hispanic male (Serrato) retreated to the open driver's door of the car after he spotted Officer Wade nearby. He was then ordered by Officer Wade at gunpoint to get on the wet ground with his face down. Upon complying, Serrato yelled out the complained-of statements. The startling event was his sudden confrontation with the police officer and his detention at gunpoint. Serrato was clearly under the stress of excitement caused by the startling circumstances, and his statements were contemporaneous with the event. The contents of such statements along with other circumstances as declarant's appearance, behavior, and condition

25

may also be relied upon to establish the occurrence of an exciting event. *United States v. Moore*, 791 F.2d 566, 570-71 (7th Cir. 1986); *Ross v. State*, 154 S.W.3d 804, 809 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The trial court's ruling in the instant case is also supported by the fact that Serrato's statements were excited utterances under rule 803(2). The fourth point of error is overruled.

As noted, the trial court admitted the complained-of statements under the basis of rule 801(e)(2)(E) as a co-conspirator's statement. For the reasons stated above, we need not determine if that ruling is correct. There is ample legal basis to support the trial court's ruling. *See Wilkerson*, 933 S.W.2d at 278; *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Spann*, 448 S.W.2d at 130. Our disposition of this point of error does not question the correctness of the trial court's ruling based on rule 801(e)(2)(E). The fourth point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Patterson, Pemberton and Onion*

Affirmed

Filed: August 20, 2009

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).