

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00312-CR

**LADARYL DWAYNE KELLY,**

                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                    **Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 33228CR

## MEMORANDUM OPINION

Ladaryl Dwayne Kelly was convicted by a jury of the offense of aggravated robbery and sentenced to thirty years' imprisonment. TEX. PEN. CODE ANN. 29.03 (Vernon 2003). Kelly complains that the trial court erred by denying his motion for directed verdict at the end of the State's case-in-chief; that the trial court abused its discretion by denying his motion for mistrial; that the evidence was legally and factually insufficient; and that the trial court abused its discretion by denying his motion for new trial based on newly discovered evidence. Because we find no reversible error, we affirm the judgment of the trial court.

*Directed Verdict*

Kelly complains that the trial court erred by denying his motion for a directed verdict at the close of the State's case-in-chief because there was insufficient evidence to establish that he was criminally involved in the aggravated robbery. A motion for a directed verdict is a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). In reviewing the legal sufficiency of the evidence, we look at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *Bigon v. State*, 252 S.W.3d 360, 366 (Tex. Crim. App. 2008).

Under a legal sufficiency review, we consider all of the evidence admitted, both properly and improperly admitted, as well as direct and circumstantial evidence. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). The jury, as the sole judge of the witnesses' credibility and the weight to be given to their testimony, is free to accept or reject any or all of the evidence presented by either side. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (*citing Jackson v. Virginia*, 443 U.S. at 318-19). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can alone be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

Kelly argues that the evidence was insufficient to connect him to the aggravated robbery. Kelly was charged both as a principal and under the law of parties. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2) (Vernon 2003). Therefore, if there is legally sufficient evidence that Kelly acted as either a principal or party to the offense, we will uphold the jury's verdict. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) ("The principle is well-established that when the jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld.").

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PEN. CODE ANN. § 7.01(a) (Vernon 2003). A person is "criminally responsible" for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id*. § 7.02(a)(2). Evidence is sufficient to convict under the law of parties where the accused is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).

In determining whether an accused participated as a party, the fact-finder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the accused that show an understanding and common design to commit the offense. *Id*. Further, circumstantial evidence may be used to

prove party status. *Id*. To convict under the law of parties, when the defendant is not the "primary actor," the State must prove (1) conduct constituting an offense, and (2) an act by the defendant that was done with the intent to promote or assist such conduct. *Christensen v. State*, 240 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

*The State's Case-in-Chief*

At approximately 1:15 a.m., a masked man carrying a gun got out of a green Ford vehicle and approached a guard at Celadon Trucking. The masked man pushed the gun into the guard's neck and forced him into a guard shack, when a second man entered and pointed a gun at the guard. The guard was tied up with duct tape. A truck and trailer carrying cigarettes worth approximately two million dollars ($2,000,000.00) was then stolen from that facility. The truck and trailer were located by the Dallas Police Department within hours of the robbery because of a tracking device inside of the trailer.

Kelly was identified in a videotape and photographs from Celadon Trucking as being one of the individuals that had unsuccessfully attempted to steal the same truck and trailer approximately three hours before the truck and trailer were actually stolen in the robbery. Kelly's cell phone number was traced to a tower close to Celadon Trucking during that same time period.

Kelly had been working as a confidential informant for the North Texas Auto Theft Task Force, a multi-law enforcement agency investigation unit whose primary objective was the investigation of tractor trailer thefts. Detective Cole, a detective with the Dallas County Sheriff's Office who had been assigned to the task force, had been in

contact with Kelly throughout the evening, but there was a gap in contact during the time that the robbery took place. Cole knew that a trailer theft was being planned that night from Kelly, who had called him throughout the day and evening leading up to the robbery. Cole withheld knowledge of Kelly's participation in the attempted theft and robbery for approximately four months after the robbery from the officers investigating the robbery. Cole also knew that Kelly carried a gun even though he was a convicted felon. Cole also acknowledged hearing Kelly testify in a previous hearing that he was going to get $750,000.00 for selling the cigarettes, which would be split between Kelly, Tasby, and another co-defendant. Kelly had proven reliable in other instances where he had provided information that had led to the recovery of approximately eight million dollars' worth of trucks and trailers.

One of Kelly's co-defendants, Tasby, was also identified in the earlier photographs of the attempted theft. Tasby made several inconsistent statements to the detectives investigating the theft, but was consistent in his claims that Kelly was involved in the planning of the theft, including both the earlier attempt and the robbery. Further, Tasby had claimed in those statements that Kelly had recruited the gunmen for the robbery.

The employees of Celadon that testified were unable to identify Kelly as being involved in the robbery and the guard who was held at gunpoint testified that Kelly was not one of the gunmen that night.

Kelly made two incriminating telephone calls while he was in jail after his arrest. In the first, he told his girlfriend that he had been caught for what they had done in

Waxahachie and that two of the other co-defendants, one of which was Tasby, had just gotten out of jail for. In the second, he told the mother of his daughter that he couldn't get a job even as a truck driver with an aggravated robbery on his record and stated, "And then when they find out what we stole, a f---ing truck."

Viewing the evidence in a light most favorable to the verdict, we do not find that the trial court erred in denying Kelly's motion for directed verdict at the close of the State's case-in-chief. We overrule issue one.

### Denial of Mistrial

Kelly complains that the trial court erred by denying his motion for mistrial after the State elicited testimony given by Kelly at a pre-trial hearing. The State contends that Kelly did not preserve his complaint by making a timely objection.

The State asked a series of questions to Detective Cole regarding the amount that Kelly was to be paid for the cargo that was on the stolen truck. In response to the questions propounded by the State, Cole stated that he had heard the testimony that Kelly and his co-defendants were going to split $750,000.00 after the night of Kelly's arrest; he had heard Kelly say that in the same courtroom as the current trial; and he had heard it in the courtroom at a prior hearing. As the State was asking the next question, Kelly objected to the use of the prior testimony.

In order to preserve error for purposes of appeal, an objection should be made as soon as the ground for objection becomes apparent. TEX. R. APP. P. 33.1; *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997). Generally, this occurs when the evidence is admitted. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). If a party fails to

object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived. *Id*. Kelly's objection was not timely. We overrule issue two.

*Legal and Factual Sufficiency*

Kelly complains that the evidence was both legally and factually insufficient for the jury to have found him guilty of the aggravated robbery. Kelly contends that he was acting solely as a confidential informant during the times surrounding the aggravated robbery, that there was insufficient evidence of his intent to commit the robbery, and that there was insufficient evidence that he was more than merely present prior to, during, and after the robbery.

*Standard of Review*

The standard of review for determining the legal sufficiency of the evidence is the same as that discussed above for a directed verdict. In a review of the factual sufficiency of the evidence, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414-15, 417. Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the fact-finder's determinations, "particularly those

determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that we "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. A factual sufficiency review of circumstantial evidence is the same as a review of direct evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) (reasoning that "[c]ircumstantial evidence, by itself, may be enough to support the jury's verdict").

*The Remaining Evidence*

Kelly and Stewart, one of the other individuals who participated in the aggravated robbery, both testified. Both of them stated that Kelly was present at all times when the robbery was planned, that Kelly recruited one of the participants as well as the potential seller of the cargo, and that Kelly knew that guns were involved and that the plan included tying up a guard. The planning of the thefts took place outside of Kelly's mother's residence. Kelly drove Tasby and Stewart to Celadon earlier in the

evening when the theft was attempted the first time, and acted as a lookout while Tasby and Stewart looked in trailers for cargo.

Kelly acknowledged that he had testified in the earlier hearing that they were going to be paid $750,000.00 for the cargo and that he knew that guns were going to be used prior to their departing to go to Celadon the second time, but he was going to surrender the money to Cole. Kelly stated that he believed that he was working as a confidential informant that night, and that the intent was to set up the purchaser of the cargo. Kelly admitted to carrying a gun for his own protection, even though he was a convicted felon. Kelly affirmed that he had made a good living stealing cargo loads prior to this incident, although he denied discussing his prior lucrative lifestyle with his wife from jail.

Detective Cole testified a second time and explained that Kelly had been working as a confidential informant and had provided credible information that resulted in the recovery of trucks on multiple occasions for the North Texas Auto Theft Task Force after being arrested in 2006. Cole did not, however, get approval from the court to use Kelly as a confidential informant even though Kelly's activities as a confidential informant constituted violations of his felony probation. Kelly called Cole fourteen times prior to the cargo being found by the Dallas Police Department, but those calls stopped prior to the robbery. Kelly did not tell Cole that guns were going to be used and did not inform him that there was going to be a robbery. Kelly told Cole that Tasby and Stewart were involved, but Cole did not disclose that to the investigating officers.

Cole's superiors knew that Kelly was working as a confidential informant and that he had provided credible information previously. Detective Cole was investigated regarding his use of Kelly as a confidential informant, but had been cleared of wrongdoing beyond a finding that there had been "procedural oversights" in his handling of Kelly. Kelly had been paid $750.00 as an informant, and had returned $500.00 to the task force.

Ultimately, the jury was called upon to determine whether or not Kelly's participation during the planning, execution, and aftermath of the robbery was that merely of an observer and confidential informant or if his involvement in the planning, failed attempted theft, the recruitment of participants in the robbery and the brokered future sale of the cargo, combined with his presence at both the attempted theft and the robbery, rose to the level of participation as a party. The jury also was called upon to find whether or not Kelly encouraged the commission of the robbery by his words or other agreement. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). The jury was free to believe or disbelieve the witnesses and to observe their demeanor. Viewing the evidence both in a light favoring the judgment and in a neutral light, we find that the evidence was both legally and factually sufficient for the jury to have found beyond a reasonable doubt that Kelly participated in the aggravated robbery as a party. We overrule issue three.

### Denial of Motion for New Trial

Kelly complains that the trial court abused its discretion by denying his motion for new trial based on newly discovered evidence. Kelly filed a motion for new trial

alleging that new evidence had been discovered after his trial. The new evidence was a copy of some cell phone records for a cell phone in the name of Kelly's stepfather that showed telephone calls made from that cell phone number to the Dallas County Sheriff's Office during the hours after the attempted theft, during the robbery, and after the robbery. Additionally, Kelly attached an affidavit from one of the jurors that those cell phone records would have led her and two other jurors to have decided the case differently.

The State objected to the affidavit from the juror pursuant to rule 606(b) of the Texas Rules of Evidence. Rule 606(b) prohibits a juror from providing an affidavit regarding the deliberations or "the effect of anything on the juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment." TEX. R. EVID. 606(b). We agree that the affidavit was inadmissible.

Kelly would be entitled to have his motion for new trial granted if (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). The trial court has discretion to decide whether to grant a new trial based on newly discovered evidence, and its ruling will not be reversed absent an abuse of discretion. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could

support the trial court's ruling. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

Kelly presented no evidence in his motion for new trial that the evidence was unknown to him at the time of trial or that the failure to discover the new evidence was not due to his lack of due diligence. Kelly's use of another cell phone would be squarely within Kelly's personal knowledge. Kelly's apparent failure to disclose his alleged use of another cell phone during times critically relevant to his defense could only be due to his lack of diligence. The records were certainly available to be sought prior to trial had Kelly disclosed that the phone was used to his attorney and investigator, and there is nothing in the record to the contrary. The trial court did not abuse its discretion in not granting Kelly's motion for new trial. We overrule issue four.

*Conclusion*

We find that the trial court did not err by denying Kelly's motion for a directed verdict. We also find that Kelly's complaint regarding the denial of his motion for mistrial was not properly preserved by a timely objection at trial. Further, we find that the evidence was both legally and factually sufficient for the jury to have found Kelly guilty as a party beyond a reasonable doubt. Lastly, we find that the trial court did not abuse its discretion in failing to grant a new trial based on newly discovered evidence. We affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed September 8, 2010
Do not publish
[CRPM]