**Opinion filed September 29, 2011**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00302-CR
_____

### CHRISTOPHER ANDREW MILLER, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. 20840**

### M E M O R A N D U M   O P I N I O N

The jury convicted Christopher Andrew Miller of theft over $200,000 or more and assessed his punishment at confinement for ten years in the Institutional Division of the Texas Department of Criminal Justice. Upon the jury's recommendation the trial court suspended the imposition of the sentence and placed Appellant on community supervision for ten years. We affirm.

In two issues, Appellant challenges both the legal and factual sufficiency of the evidence. The Court of Criminal Appeals in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010),

abandoned the factual sufficiency standard, and we need only consider the sufficiency of the evidence under the legal sufficiency standard.

The standard of review for an appellate court in evaluating the legal sufficiency of the evidence is to determine whether any rational finder of fact could have found the existence of the elements of the offense after viewing all of the evidence in a light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks*, 323 S.W.3d 893; *Gibbs v. State*, 819 S.W.2d 821, 834 (Tex. Crim. App. 1991). The appellate court's duty is not to sit as a thirteenth juror reweighing the evidence or deciding whether it believes the evidence established the elements in question beyond a reasonable doubt. *Gibbs*, 819 S.W.2d at 834; *Blankenship v. State*, 780 S.W.2d 198, 206-07 (Tex. Crim. App. 1988). The sufficiency test must be applied to the application paragraph in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In reviewing the evidence when the appellate court is faced with facts that support conflicting inferences, it must presume that the finder of fact resolved the conflict in favor of the verdict, and any inconsistencies must be resolved in favor of the verdict. *Farris v. State*, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990).

EBAA Iron, Inc. is a company located in Eastland, Texas, that manufactures clamps that hold underground water mains together. Appellant was a vendor to EBAA, at first providing trucking services. EBAA uses plastic clips to hold the pipe assemblies together during transport, and Appellant proposed that he supply these clips to EBAA. EBAA agreed, but the parties never had a written contract. EBAA did not keep a large stockpile of clips on the premises, and Appellant was to bring the clips on an as-needed basis.

Earl T. Bradley, the president of EBAA, was the person who signed most of the checks for accounts payable. He noticed that he was signing a large number of checks to Appellant's company for the plastic clips. It seemed to Bradley that Appellant was being paid for a number of clips far in excess of what the company actually used, and he discussed his concerns with the company's accounts payable clerk, Lois "Ginger" Vaughn. Vaughn personally received the invoices from Appellant. Bradley looked for a large stockpile of clips at the plant facility, but found none.

Appellant was not the only supplier of clips to EBAA. Another company, Metro Custom Plastics, also supplied the clips. When Metro shipped clips to EBAA, it included a packing slip

with the shipment that reflected what Metro had shipped. Most vendors to EBAA followed the packing slip procedure, but Appellant did not include such a document with his shipments. Because Appellant did not include a packing slip with his shipments, EBAA's controller, Gregory Leon Christiansen, could not verify how many clips Appellant actually shipped to EBAA.

Christiansen analyzed the number of clips that had been delivered by the other vendor, the number of clips that had actually been used, the number of clips that were on hand, and the number of clips for which Appellant had billed EBAA. Based on his analysis of the data, Christiansen concluded that Appellant had billed EBAA for some seventy-eight pallets of clips that were not delivered. EBAA paid Appellant $951,148.27 for clips that he never delivered.

When Appellant was confronted with the fact that he had billed for a large number of clips that had not been delivered, he "acted surprised." Appellant made an offer to work the amount off, but Bradley felt it was far too large an amount for that kind of arrangement.

David Hullum, a Texas Ranger, was called to investigate the theft. Ranger Hullum executed a search warrant for Appellant's place of business in an effort to find documentation. When Ranger Hullum interviewed Appellant, he stated he did not know how many clips he manufactured in a year. Appellant also told Ranger Hullum the name of the company from which he obtained the plastic that he used to make the clips and he also told Ranger Hullum the number of clips that he could make from a foot of plastic. There was only one company from which he ordered the plastic for the clips: Nationwide Plastics.

Ranger Hullum did not believe that Appellant was forthcoming with information in that interview. Ranger Hullum felt that a person who was running the kind of business that Appellant ran should have had answers for the questions Ranger Hullum asked. Appellant admitted that he only delivered clips when EBAA ordered them; he never took it upon himself to deliver clips without an order.

Ranger Hullum asked Appellant about a letter that was signed by the sales person for his plastic supplier, Donna O'Donald. This letter purported to give Appellant the amounts of plastic that he ordered from the supplier during the relevant time period. Appellant never definitively said that the amounts in the letter came from him or the supplier. Appellant was equivocal when

Ranger Hullum asked him about the letter, at first saying that his sister had requested the letter. Later, Appellant admitted to Ranger Hullum that O'Donald prepared the letter at his request.

Donna O'Donald sold nylon rolls of plastic to Appellant for about seven to eight years. Appellant called her and asked her to give him records of all the nylon rolls she had sold to him, but she told Appellant that she did not keep such records. Appellant told her that he kept such records and asked her to sign a letter, containing the amounts of nylon she allegedly sold to him, that he would fax to her.

O'Donald had received some distressing health news and was about to go to her doctor. But, Appellant insisted that she sign the letter and fax it to him before she went to the doctor. O'Donald, wanting to please her customer, signed the letter even though she had not actually read it. This was the same letter that Ranger Hullum had asked Appellant about and about which he was so evasive. When O'Donald actually read the letter, she realized that she had not sold Appellant nearly as much plastic as the amount written in the letter by Appellant.

Rowdy Rollins, a former worker at EBAA, testified that EBAA had changed the material specification of the clip and had to dispose of "seven pallets" worth of clips made of the old material. There were approximately 500,000 clips on a pallet. Christiansen testified that he was not aware that EBAA had destroyed the clips, but he would expect that, if something like that had happened, he would have been notified. Rollins did not say when EBAA had destroyed the clips. He also testified that some thirty pallets of clips were sent to EBAA's plant in Cordele, Georgia.

The evidence in this case is legally sufficient. Appellant was indicted for theft by deception for the series of thefts that consisted of sending invoices for plastic clips that had not been delivered but for which he received payment. *See* TEX. PENAL CODE ANN. § 31.03(b)(1) (Vernon 2011). Deception is defined as "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." *Id.* § 31.01(1)(A).

A jury is entitled to draw inferences of intent from the acts, words, and conduct of a defendant. *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Intent is most often proved through circumstantial evidence, rather than through direct evidence. *Id.* In this case, the record contains sufficient evidence that Appellant deceived

4

EBAA by sending it invoices for items he did not deliver. First, there is a huge disparity between the amount of clips Appellant delivered and the amount for which he billed. As noted above, Appellant was in the habit of personally delivering the invoices for clips he allegedly delivered. Each invoice Appellant presented to EBAA for which no product was delivered was an act from which the factfinder could properly draw an inference of deception.

Also, when Appellant was confronted with the actual numbers, he gave false information to show that the number of clips he delivered and the number for which he billed were the same. While there was evidence that EBAA destroyed some of the plastic clips, it was the jury's province to believe or disbelieve this testimony. *See Limuel v. State*, 568 S.W.2d 309, 311 (Tex. Crim. App. 1978) (a jury may accept or reject any or all of the testimony of any witness). In any event, the evidence showed that the amounts allegedly destroyed or sent off-premises were less than one-half of the number of clips for which Appellant billed EBAA that Appellant did not deliver. The evidence being sufficient, Appellant's first issue is overruled. As noted above, we need not consider Appellant's second issue.

The judgment of the trial court is affirmed.


ERIC KALENAK
JUSTICE

September 29, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: McCall, J.,
Kalenak, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.