Opinion issued
November 3, 2011

 

 

 

 

 

 



 

 

 

 

 

 

In The

Court of Appeals

For The

First District of
Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-10-00897-CR

____________

 








YOLUNDA GARY PRICE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 

On Appeal from the 263rd District Court

Harris County, Texas

Trial Court Cause No. 1222541

 

 



MEMORANDUM OPINION








A jury found appellant, Yolunda Gary
Price, guilty of third-degree felony theft of property with an aggregated value
between $20,000 and $100,000, see
Tex. Penal Code Ann. §§ 31.03(a),
(b), (e)(5), 31.09 (Vernon 2011), and the trial court
assessed punishment at two years’ confinement. 
On appeal, appellant contends that the evidence is insufficient to
support her conviction.  We affirm.

BACKGROUND

          In 1999,
appellant applied for Social Security Income (SSI) benefits on behalf of her
disabled son, Justin Price.  In December
2002, appellant attended an interview with the Social Security Administration
(SSA) where she was designated as her son’s representative payee, meaning that
she was subsequently entitled to receive her son’s SSI benefit payments and use
or save them on his behalf.  The
representative payee application, signed by the appellant, contained a printed acknowledgement
stating that she would, among other things, “notify the Social Security
Administration when [Justin] . . . leaves my custody or otherwise changes his
living arrangements or he is no longer my responsibility.” Victoria Tavarez, a
claims representative for SSA, testified that she interviewed appellant when
she applied for Justin’s benefits in 1999. 
She also testified that upon filing the application to be a payee, the
rights and responsibilities of a payee were read to appellant, including the
requirement to report a change of custody. No allegations were made, and no
evidence was presented, that appellant acted improperly in her role as Justin’s
representative payee before 2005.

In either February or March 2009, Lianne
Socha, a mental health professional, drove Justin and appellant’s ex-husband,
Felton Price, to an SSA office to apply for SSI benefits, where they were
informed that payments were already being made on Justin’s behalf.  Felton testified that appellant had never
told him that Justin was already receiving benefits and that he had not received
payment since Justin began staying with him in February 2005.  The SSA then began an investigation and
determined that between May 1, 2005 and April 30, 2009 (the period for which
appellant was convicted), $28,896.00 in SSI benefits was paid to appellant.  The SSA completed its investigation and
presented the results to the Harris County District Attorney’s office.  Appellant’s indictment and conviction
followed.

          Events
during the period from February 2005 to April 2009 were the subject of conflicting
testimony at trial.  Felton testified
that Justin came to stay with him on February 17, 2005.  While Felton stated that Justin stayed at
appellant’s residence a few times during the remainder of 2005, Justin did not
stay with appellant at all from 2006 through 2009.  Felton also testified that before 2009,
appellant never sent food or clothing to Justin while Justin was in Felton’s
care.  Felton’s brother, Jerry Price,
testified that he lived next door to Felton for three weeks in April 2005 and
that every time he went to visit Felton between 2005 and 2009, Justin was
present.  Brian Conner, a crisis
counselor and screener, testified that when he met Justin in November 2008,
Justin was in Felton’s custody.  Lianne
Socha testified that when she met Justin in February or March 2009, Felton was
his primary caretaker.

In contrast, appellant testified that
she maintained a room for Justin at her residence throughout the 2005 to 2009 timeframe
and that she did not feel that Justin had moved out because he continued to
come and go at unexpected times.  She
also stated that shortly after Justin went to stay with Felton in 2005, he
returned and resided with her for several weeks.  Despite testimony from SSA representative
Tavarez to the contrary, appellant maintained that she was never told that she
was required to make a report if Justin went to stay somewhere else for more
than thirty days.  Shanea Danielle Price
(the daughter of appellant and Felton) resided with appellant during this time
and also testified that appellant always kept a room ready for Justin and that
Justin stayed at appellant’s residence at various intervals from 2005 onward. 

Appellant and Shanea each testified that
appellant told Felton about Justin’s benefits, but that Felton said Justin did
not need the benefits. Further, appellant stated that she would buy Justin
clothes, food, and video games on a monthly basis from 2005 to 2009 and that
Shanea would deliver them to Justin.  Felton,
she averred, would refuse the food but accept the snacks, clothes, and video
games.  Shanea also recalled making
monthly or biweekly visits to Felton’s residence throughout this time to take
Justin items such as “tennis shoes, snacks, clothes, underwear, [and] video
games.”  

Appellant was unable to provide any
documentation to show how the $28,000 in benefits had been spent.  Appellant stated that she lost the documentation
in a hurricane that had damaged her home. 
While no reports to the SSA were presented for other years, appellant completed
a representative payee report in March 2008 in which she provided an accounting
of how Justin’s benefits were spent in 2007: $300 per month for rent, $100 per
month for bills and utilities, $150 per month for food, $85 per month for
personals, and small amounts from time to time for snacks or other
personals.  The report also stated that
Justin lived with the same person throughout 2007.  

On April 15, 2009, as part of the
SSA’s investigation, special agents visited appellant’s residence and asked to
speak with her.  After initially denying
that she was Yolunda Price and presenting false identification, appellant revealed
her identity and agreed to speak with the agents.  At trial, appellant testified that she
initially presented false identification to the agents because she did not know
why the agents were there and did not want to traumatize her grandchildren and
nieces, who were present with her in the home at the time.  She stated that she did not want them to see
her handcuffed in the event that she was arrested for traffic tickets.  According to her testimony, appellant took
the children to a back room of the residence and then promptly went outside to
speak with the agents.

 David Hubbard, one of the special agents at
appellant’s residence that day, testified that during their conversation,
appellant stated that Justin had been living with Felton since 2006.  Hubbard also stated that appellant told him
that Felton would not allow Justin to take medication and that, although Felton
knew that appellant was receiving Justin’s benefits, he refused to accept
them.  Appellant then told Hubbard that
she did not cancel Justin’s benefits because she wanted to be able to purchase
his medicine for him.  Appellant also
told Hubbard that due to poor relations with Felton, Shanea would deliver items
to Justin. 

At the end of the discussion,
appellant agreed to compose a handwritten statement, which agents collected two
days later. In that statement, appellant apologized for “not making the right
decisions” about Justin’s benefits.  However,
she maintained that she felt she “should always have a place” for Justin, in
part because she “didn’t know from day to day if Justin would come back.”  Appellant also wrote that she told Felton about
the benefits “on numerous occasions” and “kept telling [herself] that he would
do the right thing,” but to no avail.  Writing
that her intentions were sincere at the time, she stated that she now recognized
that she “was sincerely wrong.” At trial, appellant affirmed that she did not
report that Justin’s living arrangements had changed because she never knew
when Justin would come to stay with her—a fact complicated by her inability to
communicate with Felton—and because she did not want Justin to lose his
benefits due to Felton’s refusal to accept them.  She stated, “I was trying to make a right
decision based on my child.  But I didn't
make the right decision according to the paperwork.”

SUFFICIENCY OF THE EVIDENCE

          In her sole point of error, appellant
contends that the evidence was legally insufficient for a rational jury to
conclude beyond a reasonable doubt that she “knowingly used deception to obtain
payments from the Social Security Administration.” 

Standard of Review

This Court reviews legal and factual
sufficiency challenges using the same standard of review.  Ervin v. State, 331 S.W.3d 49, 53–55
(Tex. App.—Houston
[1st Dist.] 2010, pet. ref’d) (construing majority holding of Brooks v. State, 323 S.W.3d 893, 912, 926 (Tex.
Crim. App. 2010)).  Under this
standard, evidence is insufficient to support a conviction if, considering all
the record evidence in the light most favorable to the verdict, no rational
factfinder could have found that each essential element of the charged offense
was proven beyond a reasonable doubt.  See
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789 (1979); In re Winship, 397 U.S. 358, 361, 90 S. Ct.
1068, 1071 (1970); Laster v. State, 275 S.W.3d 512, 517 (Tex.
Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex.
Crim. App. 2007).  Viewed in the
light most favorable to the verdict, the evidence is insufficient under this
standard in two circumstances: (1) the record contains no evidence, or merely a
“modicum” of evidence, probative of an element of the offense; or (2) the
evidence conclusively establishes a reasonable doubt.  See Jackson, 443 U.S. at 314, 318  n.11, 320, 99 S. Ct. at 2786, 2789 n.11; Laster, 275 S.W.3d at 518;
Williams, 235 S.W.3d at 750.  Additionally, the evidence is insufficient as
a matter of law if the acts alleged do not constitute the criminal offense
charged.  Williams, 235 S.W.3d at 750. In
evaluating a claim of insufficiency of the evidence, an appellate court may not
re-evaluate the weight and credibility of the record evidence and thereby
substitute its own judgment for that of the factfinder.  Id.  An appellate court determines whether the
necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.  Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  If
an appellate court finds the evidence insufficient under this standard, it must
reverse the judgment and enter an order of acquittal.  See Tibbs v. Florida,
457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

Law Pertaining to Aggregated
Third-Degree Theft of Property

A person commits theft of property if
she unlawfully appropriates property with intent to deprive the owner of
property.  Tex. Penal Code Ann. § 31.03(a) (Vernon 2011).  When amounts are obtained in violation of
Chapter 31 of the Texas Penal Code pursuant to one scheme or continuing course
of conduct, whether from the same or several sources, the conduct may be
considered as one offense and the amounts aggregated in determining the grade
of the offense.  Tex. Penal Code Ann. § 31.09 (Vernon 2011).  

A
person acts with intent when it is her conscious objective or desire to engage
in the conduct or cause the result.  Id.
§ 6.03(a) (Vernon 2003). Appropriation of property is unlawful if it is
done without the owner’s effective consent. 
Id. § 31.03(b)(1).  Consent is not effective if it is induced by
deception.  Id.
§ 31.01(3)(A).  “Deception” includes (1) “creating
or confirming by words or conduct a false impression of law or fact that is
likely to affect the judgment of another in the transaction, and that the actor
does not believe to be true,” and (2) “failing to correct a false impression of
law or fact that is likely to affect the judgment of another in the
transaction, that the actor previously created or confirmed by words or conduct,
and that the actor does not now believe to be true.”  Id.
§ 31.01(1)(A,B).  

Deception
and intent may be inferred from the circumstances.  See Smith v. State, 965 S.W.2d 509, 518 (Tex. Crim. App.
1998); Lewis v. State, 715 S.W.2d 655, 657 (Tex. Crim. App. 1986);
Christensen v. State, 240 S.W.3d 25, 34–35 (Tex. App.—Houston [1st
Dist.] 2007, pet. ref’d) (“A jury may infer intent from any facts that tend to
prove its existence, such as the acts, words, and conduct of the defendant.”).
Circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor, and circumstantial evidence alone can be sufficient to
establish guilt. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).


Analysis

          The State’s theory of the case was that
appellant knowingly failed to correct the SSA’s false impression that Justin
continued to live with appellant after 2005, and that had appellant corrected
this false impression, she knew that the SSA would not have continued to pay
her Justin’s SSA benefits.  In her sole
issue on appeal, appellant contends “there was insufficient evidence from which
a rational jury could conclude that Appellant created [or failed to correct] a
false impression of fact that she did not believe to be true.”  Specifically, appellant argues that “[a]t
most the State proved that Appellant neglected to inform the Social Security
Administration of Justin’s move to his father’s [sic],” and that appellant
“could have justifiably considered [Justin] as still a member of her household.”

          The State argues that appellant’s
intent to deceive the SSA into continuing to pay her Justin’s benefits can be
proved by the following facts.  First,
there was evidence that appellant was aware that she was obligated to inform
the SSA if Justin was no longer living with her or in her custody.  The application that she signed when she
applied for the SSA benefits contained a printed acknowledgement stating that
she would, among other things, “notify the Social Security Administration when
[Justin] . . . leaves my custody or otherwise changes his living arrangements
or he is no longer my responsibility.” 
SSA claims representative Victoria Tavarez testified that upon filing
the application to be a payee, the rights and responsibilities of a payee were
read to appellant, including the requirement to report a change of custody.

          Second, despite appellant’s testimony
to the contrary, the jury could have believed Felton’s testimony that appellant
never told him that she was receiving SSA benefits on Justin’s behalf.  Felton’s testimony is corroborated by
evidence that he sought to obtain benefits on Justin’s behalf in 2009.  Similarly, appellant’s claim that Felton said
that Justin did not need SSI benefits is contrary to Felton’s action in seeking
benefits for Justin.  And, despite
appellant’s argument that “she could have justifiably considered [Justin] as
still a member of her household,” there was evidence that Justin visited
appellant rarely in 2005, and never after 2006.

          Third, although appellant claimed that
she regularly purchased clothes, food, and video games for Justin and had them
delivered by Shanea, she had no documentation to show how the SSA benefits had
been spent.

          Fourth, when SSA agents went to
appellant’s house to investigate, appellant initially claimed to be someone
else and gave the agents a false name.  See Felder v. State, 848 S.W.2d 85, 98
(Tex. Crim. App. 1992) (holding that presenting false identification to police
evidences consciousness of guilt).

          Finally, appellant’s written statement
to the SSA agents acknowledged that her decisions regarding Justin’s benefits
were “wrong.”

From
this evidence, we believe that a jury could reasonably conclude that appellant
intended to deceive the SSA into continuing to pay her Justin’s benefits by
failing to correct the SSA’s false impression that Justin continued to live
with appellant even after the date that he went to live with his father in
2005. Accordingly, the evidence is legally sufficient to
support the jury’s verdict that appellant obtained the benefits
by deception.

 

CONCLUSION

We
affirm the trial court’s judgment.

 

 

                                                          Sherry
Radack

                                                          Chief
Justice 

 

Panel consists of Chief Justices Radack and Justices Bland
and Huddle.

 

Do not publish. 
Tex. R. App. P. 47.2(b).